SARAH A. RENZ v. VIRGINIA DRURY *et al.*

No. 8560.

1. EVIDENCE—*Declarations of Decedent.* All the parties claiming title to certain real estate directly from Nicholas Renz, as heirs, evidence of the defendants as to communications had personally with him was inadmissible, under section 322 of the civil code.

2. ADOPTED CHILDREN—*Rights of Inheritance.* Where the adoption of children is regulated by statute, as in Iowa and Kansas, rights of inheritance can only be acquired through adoption by a substantial compliance with the provisions of the statute.

3. PAROL AGREEMENT—*Specific Performance.* Specific performance of a parol agreement to make a foster-child, not legally adopted, an heir, in consideration of her personal services, will not be enforced as to real estate not owned by the foster-parents at the time of the agreement, when the value of such services is easily ascertainable.

*Error from Brown District Court.*
*Hon. J. F. Thompson, Judge.*

REVERSED AND REMANDED.          OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

THE plaintiff commenced her action against the defendants on January 16, 1890, to quiet her title to the west half of lot 89, on Oregon street, in Hiawatha. She alleged that Nicholas Renz died intestate and

seized of said property in 1885, leaving no children or heirs except the plaintiff, who was his lawful wife at the time of his death, but that Virginia Drury claimed to be an adopted daughter of said Nicholas Renz and the plaintiff, and said Thomas G. Drury was her husband. The defendants duly answered, making claim to a half interest in said premises, and in the rents, issues and profits thereof from the time of the death of Nicholas Renz. He and the plaintiff were residents of Burlington, Iowa, and that vicinity from 1857 until 1879, when they removed to Hiawatha. They afterward went to California, where he died. Virginia was born in Burlington, Iowa, in 1857. Her parentage was unknown, but she was taken into the home of Mr. and Mrs. Renz when about two weeks old. They were childless, and they treated Virgina as their own, and she was always called by their surname, and she never heard until she was 14 years of age that Mr. and Mrs. Renz were not her real parents ; and when she mentioned this they still claimed to her that she was their child. Afterward, when she had become about 15 years old, she heard further reports as to her parentage, and Mr. and Mrs. Renz, being pressed by her to know the truth, admitted that she was not their own child. Before this time Mr. and Mrs. Renz had removed from Burlington to a farm in that vicinity. When Virginia was about 16 years of age she went to Burlington and worked most of the time in a hotel, where she became acquainted with Thomas G. Drury, a barber, to whom she was married at a neighboring town, she then being about 19 years of age. Not long after her marriage she and her husband went to live with Mr. and Mrs. Renz. The two families remained on intimate terms, and they mutually agreed to the removal to Hiawatha, where Mr. Renz purchased a house and lot for Mr.

and Mrs. Drury, and he also furnished to Drury a barber shop free of rent. In 1881 the two families removed to California. There was a statutory mode prescribed for the adoption of children in Iowa, but it does not appear that any proceedings were had under the statute.

On the trial of the cause, Virginia Drury was allowed to testify as to a conversation with Nicholas Renz at the time that it was disclosed to her that she was not the child of Mr. and Mrs. Renz. In this conversation, it was claimed that Mr. Renz promised Virginia that if she would continue to live with them as their daughter they would make her their heir, and in case of the death of either of them she should inherit one-half of the property. Thomas G. Drury was also permitted to testify to a conversation with Nicholas Renz after the marriage, in which the latter admitted that he had made such a promise to Virginia.

The court made findings of fact and conclusions of law, and judgment was rendered in favor of Virginia Drury for an undivided one-half interest in the property in controversy, and for the sum of $1,067.09, being one-half of the net rents and profits derived by Mrs. Renz from said property since the death of Nicholas Renz. A motion by the plaintiff for a new trial was overruled, and she prosecutes this proceeding in error to reverse said judgment.

*Ira J. Lacock, R. F. Buckles, Clay B. Whitford,* and *H. A. Lindsley,* for plaintiff in error.

*James F. Falloon,* and *B. F. Killey,* for defendants in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The evidence of Virginia Drury and her husband as to conversations with Nicholas

Renz was incompetent under section 322 of the civil code. They were parties to the action, and their testimony related to communications "had personally" with the deceased person, the adverse party, Sarah A. Renz, being the heir at law of such deceased person, whose title to the cause of action was acquired immediately from him. (*Rich v. Bowker*, 25 Kan. 11; *Wills v. Wood*, 28 id. 400; *Hafer v. Hafer*, 33 id. 449, 463.) We think that the objection to the incompetency of the testimony was sufficient, and that the question is properly raised by the petition in error.

1. Declarations of decedent.

II. There was no evidence that any proceeding was ever had under the Iowa statute for the adoption of Virginia by Mr. and Mrs. Renz, and the supreme court of Iowa has decided that rights of inheritance can only be acquired through adoption by a full compliance with the provisions of the statute; and accordingly, where articles of adoption were properly executed but not recorded during the lifetime of the person adopting, it was held that no right to inherit from him was thereby conferred on the child, though the latter had complied with the terms of such articles during the full period of his minority. (*Shearer v. Weaver*, 56 Iowa, 578, 584.) In Kentucky, where there is also a statute authorizing adoption, it has been held that no agreement to adopt is effectual, unless in compliance with the statute, and even though the father gave the child his name, and reared and held him out to the world as his own, yet it was held that such adoption was ineffectual. (*Willoughby &c. v. Motley*, 83 Ky. 297, 300.) In *Wallace v. Rappleye et al.*, 103 Ill. 229, 258, the same doctrine was recognized. In Indiana and Ohio, where

2. Rights of inheritance.

rights to inherit lands have been asserted under parol agreements of like character, it has been held that such agreements come within the inhibition of the statute of frauds, and therefore cannot be enforced, unless they can be brought within some recognized exception to the application of that statute. (*Wallace, Administrator, v. Long, Guardian,* 105 Ind. 522 ; *Shahan, Exr., et al., v. Swan,* 48 Ohio St. 25.)

The cases of *Van Duyne v. Vreeland,* 12 N. J. Eq. 142 ; *Davison v. Davison,* 13 id. 246, and *Van Tine v. Van Tine,* 15 Atl. Rep. 249 ( N. J.), are cited in opposition to the foregoing authorities. But it appears that in New Jersey there was no statute regulating the adoption of children, and the courts of equity of that state recognized the validity of adoption by parol, or in writing, although no such right existed at common law. The majority of the supreme court of Michigan followed the New Jersey authorities in *Wright v. Wright,* 99 Mich. 170, and also held that the agreement was taken out of the operation of the statute of frauds by part performance. The adoption law of Michigan, which had been complied with, was afterward declared unconstitutional, leaving the state without any statute regulating the subject, as in New Jersey. *Sharkey v. McDermott,* 91 Mo. 647, is also cited by the defendants in error. That case was decided upon a demurrer to the petition which was held to admit that the agreement to adopt was in writing, and that the contract had been partially performed. *In re Evans,* 106 Cal. 562, is also cited by the defendants in error, but in that case the proceedings to adopt were regular, so far as the parties were concerned ; but the judge failed to make the proper entry upon his record, although he indorsed his approval on the

agreement of adoption, and we think it was correctly held that this failure of the judge properly to perform his duty did not deprive the adopted child of her rights.

Mr. and Mrs. Renz and Virginia resided in Iowa from 1857 until 1879, the latter date being three years after Virginia was married. Whatever contract there may have been between the parties was governed by the laws of that state, and we think it fairly settled by the authorities that in a state having a statute regulating the adoption of children the provisions thereof must be substantially followed in order to clothe the adopted child with the right of inheritance ; and, as there was no evidence of compliance with the Iowa statute, we think that Virginia did not establish a right to a half interest in the lot in controversy and the rents and profits thereof on the theory of adoption.

III. Counsel for the defendants in error claim a right in the property by virtue of the agreement made with Virginia when she was 15 years of age, and her compliance with that agreement. She testified, and 3. Agreement the court found, that while working at the to make a foster-child hotel she paid her wages to Nicholas Renz, an heir. but we hold that a right to real estate in Kansas, not then owned by Nicholas Renz or his wife, could not be acquired by a parol agreement of this nature. The contract theory of this case, based upon services, comes within the reasoning in *Baldwin v. Squier*, 31 Kan. 283, where it is held that payment of the purchase price does not take such a contract out of the reach of the statute of frauds, because the money can be recovered back by action, and so no fraud will be accomplished if the parol contract is not enforced. In the present case, the value of the services of Virginia from the time that said contract was made until she married was easily ascertainable, and might have been

recovered on a *quantum meruit*, as held in *Wallace, Administrator, v. Long, Guardian*, supra.

The judgment will be reversed, and the cause remanded to the district court for a new trial.

All the Justices concurring.