(No. 2063. Dec. 31, 1918.)
## BARNEY v. HUTCHINSON et al.

### SYLLABUS BY THE COURT.

A contract to adopt a child according to existing statutory
law is valid in equity, and where everything required to be
done has been performed, except taking the necessary sta-
tutory steps to perfect legal adoption, equity will consider
that done which ought to have been done, and decree specific
performance of the contract, to the end that the foster child
shall be entitled to the rights of inheritance prescribed by
statute.

Appeal from District Court, San Miguel County,
Leahy, Judge.

Action by Roxia Elizabeth Barney, a minor, by
William B. Bunker, her next friend, against George H.
Hutchinson, administrator, and others. From a judg-
ment dismissing the action, plaintiff appeals. Reversed,
with directions to grant a new trial.

CHAS. W. G. WARD, of E. Las Vegas, HERBERT W.
CLARK, of San Francisco, Cal., E. V. LONG, of E. Las
Vegas, W. B. BUNKER, of Oakland, Cal., and O. H.
AVERY, of Troy, Mo., for appellant.

Frank Barney was legally adopted.

Lindsley v. Patterson, 177 S. W. 826; Horton v. Troll,
183 Mo. App. 677.

Contracts of adoption fully performed on one side will
be specifically enforced.

4 Pom. Eq. Jur. (44th Ed.) Sec. 1405; Van Tyne v.
Van Tyne, 1 L. R. A. 155; Chehak v. Bettles, 8 L. R. A.
(N. S.) 1130; Van Dyne v. Vreeland, 3rd Stewart, 370;
Noe v. Miller, 4th Stewart, 234; New York City Bank v.
Carey, 12 Stew., 25; Thomas v. Maloney, 142 Mo. App.,
193; Novack v. Berger, 133 Mo. Sup., 244; Healey v.
Simpson, 113 Mo., 340; Lunn v. Hockaday, 162 Mo., 111;
Hockaday v. Lynn, 200 Mo. Sup., 464; Sharkey v. Mc-

Dermott, 91 Mo. Sup., 647; Wales v. Holden, 209 Mo. Sup., 552; Sarazin v. Railroad, 153 Mo., 486; Wright v. Wright, 23 L. R. A. 196; Burns v. Smith, 21 Mont. 251; Healey v. Simpson, 113 Mo. 340; Godine v. Kidd, 64 Hunn. 585; Sharkey v. McDermott, 91 Mo. 647; Winn v. Winn, 166 N. Y. 263; Sutton v. Haydon,. 62 Mo. 101; Emery v. Darling, 50 Ohio St. 160; Quinn v. Quinn, 5 S. Dak. 329; Heath v. Heath, 18 Misc. 521; Schutt v. Missionary Soc., 41 N. J. Eq. 115; Pemberton v. Pemberton, (Neb.) 107 N. W. 996; 1 R. C. L. Adoption, Sec. 28.

WILLIAM G. HAYDON and CHAS. A. SPIESS, both of·Las Vegas, for appellees.

Frank C. Barney was not adopted as the son of Annie C. Hutchison and did not become her heir.

C. 31, L. 1869-1870.

Since adoption is unknown to the common· law, it fol-.ows that a legal adoption can be effected in no other way than that provided by the statute authorizing it and all the courts are agreed that there must be at least a substantial compliance with all the essential requirements of the statute.

Willis v. Bell (Ark.) 115 W. 808; In re Cozza (Calif.) 126 Pa. 161; Matter of Johnson (Calif.) 33 Pa. 460; Exparte Clark (Calif.) 25 Pa. 967; Woodwards Appeal (Conn.) 70 Atl. 453; Work v. McDaniel (Ga.) 47 S. E. 931; Sullivan v. Peo. 79 N. E. 695; Watts v. Dull (Ill.) 117 N. W. 1118 (18 L. R. A. N. S. 226); Long v. Hewitt (Iowa) 84 N. W. 920; In re Carter (Kans.) 93 Pacif. 584; Fuselier v. Masse, 4 Louisiana 423; Hullers v. Taylor (Md.) 69 Atl. 715; Puriton v. Jamrock (Mass.) 80 N. E. 802; Luppie v. Winans, 37 N. J. Eq. 245; Middleworth v. Ordway (N. Y.) 84 N. E. 291; Long v. Dufur (Oregon) 113 Pac. 159; In re Hughes (Penny) 73 Atl. 1061; Henry v. Taylor (So. Dak.) 93 N. W. 641; Haskett v. Streight (Tenn.)

62 S. W. 142; Taylor v. DeSere (Tex.) 16 S. W. 1008; Beatty v. Davenport (Wash.) 88 Pac. 1109; Schlitz v. Reinitz (Wis.) 56 N. W. 194; Nugent v. Powell (Wyo.) 33 Pac. 23; Reuz v. Drury, 49 Pac. 71; Bownings v. English, 101 N. W. 204; In re Lamb, 117 N. W. 1118; Johnson v. Terry, 34 Conn. 259; Furgerson v. Jones, 3 L. R. A. 620; Sheorer v. Weaver 9 N. W. 907; McCollister v. Yard, 57 N. W. 447; Tyler v. Reynolds, 553 Io. 146; Gill v. Tulliver, 74 N. W. 586.

The contract in dispute here was one to adopt *according to law*. The mere contract to adopt is not sufficient of itself to make the child a legal heir of the promisor, because the right to take as heir exists only by operation of law. This view is well illustrated by the following authorities:

Chekah v. Battles, 133 Iowa 107; 110 N. W. 330; 8 L. RA. NS. 1130; and the note 12 ANN. Cases 140. In re Wallace, 218 Pa. 39; 66 Atl. 1098; Clark v. West, 96 Tex. 437; 73 S. W. 797; McCalpin v. McCalpin (Tex. Civ. A.), 75 S. W. 824; 20 Pac. 842; 3 L. R. A. 620; In re Stevens' estate, 23 Pac. 379; 83 Cal. 322; In re Benton's estate (Wash.), 39 Pac. 145-148; Ex parte Clark, 25 Pac. 67.

### REPLY BRIEF OF APPELLANT.

If the intention of the parties was to *adopt* this child as the language of the agreement specifically states, and their intention was "*to educate and do for him in every respect as if he were their own offspring*" it is clear that the measure of their duty to this child, in case of a breach of their contract and a fulfillment on the part of the child *was the estate which the child would inherit if the parties died intestate*.

Bray v. Miles, 23 Ind. App. 432.

Contract will be enforced tho no mention is made as to state of adopted child.

Orvene v. McNally, 45 Pac. 710; Steinberger v. Young, 165 Pac. 432; Odenbreit v. Utheim, L. R. A. 1916. D. 421; Cronford v. Wilson, 78 S. E. 30.

OPINION OF THE COURT.

PARKER, J. This is an appeal from the district court of San Miguel county by Roxia Elizabeth Barney, minor, by William B. Bunker, her next friend, from a judgment dismissing the action, instituted by her against George H. Hutchinson, administrator, surviving spouse of Annie C. Hutchinson, who was formerly Annie C. Barney, Sarah Hill, Charles W. Hill, Jr., and George H. Hutchinson in his individual capacity.

The facts of the case are undisputed. On May 11, 1880, J. W. Barney and Annie C. Barney, his wife, then residents of Las Vegas, N. M., entered into a written contract with one Maud Benneson, natural mother of Frank Byron Benneson, then an infant less than two years of age, by the terms of which the Barneys bound themselves "to immediately adopt" said infant of Maud Benneson "according to the statutory law made and provided in such cases," and to "assume all responsibility and care of said child," and to "educate and do for him in every respect as if he were their own offspring." Under the terms of said contract the mother, Maud Benneson, agreed to relinquish all claims to said child so long as the covenants and agreements of the Barneys were kept and performed. The contract was entered of record in the office of the probate clerk of said county several days after it was executed. The child, Frank Byron Benneson, was delivered to the Barneys, and by them renamed Frank C. Barney. He continued to live with the Barneys as their son until after he had reached his majority, when he married and removed to the state of Missouri. There he was killed, leaving surviving him his widow and Roxia Elizabeth Barney, his only child. In 1893 the Barneys were divorced, and subsequently Mrs. Annie C. Barney married George H. Hutchinson. After the death of Frank C. Barney, Mrs. Hutchinson

died intestate. From the time that Frank C. Barney came into her life until her death, she treated and considered him in all respects as her son. She reared him from infancy to manhood before advising him that he was not blood of her blood. He treated her in all respects as his natural mother until his death.

No action whatever was ever taken by the Barneys to comply with the statute of adoption then in force in this territory. Chapter 31, Laws 1869-70. Whether this was due to ignorance or to other causes is immaterial. The trial court sustained appellees' demurrer to the evidence introduced in the case made by the appellant, holding that the facts did not establish in appellant any right to relief.

Counsel for the parties to this case agree that whenever a contract provides for the leaving of property by one party to another in consideration of the rendition of services, etc., the contract will be specifically enforced in equity, and that it is immaterial that such contractual provision happens to be inserted in a contract to adopt an infant or otherwise. Where counsel disagree, however, is where no such contractual provision is inserted in the contract to adopt. In such cases counsel for appellees insist that the court will not decree specific performance with respect to property rights not created by the contract to adopt.

That Frank C. Barney was not in fact legally adopted by the Barneys is indisputable. There was no pretense whatever made to follow the statutory law on the subject. The contract itself obligated the Barneys "to adopt" the child in accordance with the statutory law of adoption then existing in the territory. They simply filed for record the contract to adopt, and took no further proceedings in the premises. They did, however, take the child into their family and rear and educate him from infancy to manhood, and treat him in all respects as their own offspring. The statute required the execution of a

declaration or petition of adoption, signed and acknowledged in the presence of the probate judge.    It also required the petition to contain the substance of certain specified facts, and to be recorded, "together with other proceedings in the case," by the probate clerk.    The probate judge was required to execute a certificate "of the privileges that have been obtained," which certificate the law declared had the legal effect of "a contract or formal transaction" (chapter 31, Laws 1870).    We have examined practically every case throwing any light upon the proposition of law involved herein.    We shall not refer to all of them here, for the reason that much that we might say on the subject has been said in the case of Crawford v. Wilson, 139 Ga. 654, 78 S. E. 30, 44 L. R. A. (N. S.) 773.    In that case it appeared that the petitioner was the daughter of James Gaffney and his wife, Kate Gaffney.    When an infant she was brought to the home of Mrs. M. F. Puckett by her maternal grandmother, and was turned over to Mrs. Puckett under an agreement by her mother and grandmother to the effect that Mrs. Puckett was to take the petitioner, keep her as her own, and to adopt her as such, with all the rights relating to her as a child by blood.    In pursuance of that contract Mrs. Puckett took the petitioner into her home, gave her a name, and treated her as her child during all her lifetime.    A controversy as to who were the heirs of Mrs. Puckett arose after her death, and the case referred to arose on account thereof.    We quote at some length the opinion of the court as follows:

"There was no evidence on the interlocutory hearing before the judge that Mrs. Puckett ever applied for or obtained a judgment adopting Mrs. Wilson as her child, though several neighbors testified that she declared that she had done so. Whatever right, therefore, the petitioner may have in Mrs. Puckett's estate depends, not upon her status as a legally adopted child, but upon equities growing out of the agreement of Mrs. Puckett to adopt as a child, and the action taken thereunder by the parties thereto and the petitioner.   The authorities very generally establish the proposition that a parol obligation by a person to adopt the child of another as his own, accompanied by a virtual, though not a statutory, adoption, and acted upon by both parties during the obligor's life, may be enforced, upon the death of the obligor, by ad-

judging the child entitled as a child to the property of the obligor who dies without disposing of his property by will. (Citing cases.)   In these and in other cases various reasons were urged against the specific performance of such an agreement.   It was said that an agreement to adopt a child was too indefinite to decree such child rights to property as an heir; but it was replied that where a parent surrenders his child to another, who accepts the custody on the promise to adopt the child as his own, it cannot be doubted that the parties intended that the act of adoption, when consummated, would carry with it the right of inheritance, and that equity would consider that done which ought to have been done, and decree the child's right to his inheritance as if formal adoption had taken place.   Another objection urged against specific performance was that adoption was not recognized at common law; but inasmuch as our statutes justify it, such a contract cannot be said to be illegal or contrary to public policy.   *   *   *   So that now it is well established by authority that an agreement to adopt a child, so as to constitute the child an heir at law on the death of the person adopting, performed on the part of the child, is enforceable on the death of the person adopting the child as to property which is undisposed of by will.   Though the death of the promisor may prevent a literal enforcement of the contract, yet equity considers that done which ought to have been done, and as one of the consequences, if the act of adoption had been formally consummated, would be that the child would inherit as an heir of the adopter, equity will enforce the contract by decreeing that the child is entitled to the fruits of a legal adoption."

After speaking of the years of service rendered by the child, the court further said:

"Under the agreement between her mother and Mrs. Puckett, petitioner was to receive something beyond the literal terms of the contract.   The contractual obligation was to adopt petitioner as a child.   If formal adoption had been consummated, then the law would have vested her with a right of inheritance from Mrs. Puckett, and it is this right of inheritance which petitioner is seeking to enforce in this action."

The appellees assert that this case and the Missouri cases on the subject are not supported by any precedent, and are distinguishable from the case at bar.   With that assertion we do not agree.   Numerous cases recognize the right to specific performance of contracts to adopt, independent of any consideration as to any contractual obligation on the part of the adopting parents with reference to property or rights flowing therefrom.   In Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455, in the transac-

tion constituting the contract to adopt, nothing was said concerning property rights, and nevertheless the court held that specific performance would be decreed pursuant to the doctrine that equity considers that done which ought to have been done. See also, Anderson v. Blakesley, 155 Iowa, 430, 136 N. W. 210, which follows Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140. In the last-mentioned case the court said:

"So an agreement of adoption may fall short of meeting the statutory requirements and yet be a valid and enforceable contract. The agreement in the case at bar stipulated that plaintiff should 'acquire all the rights of inheritance by law.' This was equivalent to saying that she should share in their estate as though their own child, but not as such."

By the same reasoning the agreement in the case at bar that the Barneys would adopt the father of the appellant according to the statutory law was equivalent to saying that the adopted son should share in the estate as though he were their own son, for the law said as much. Van Tine v. Van Tine (N. J. Ch.) 15 Atl. 249, 1 L. R. A. 155, is also authority for this proposition, though the case is not very satisfactorily reasoned in the opinion. The contract in Middleworth v. Ordway, 191 N. Y. 404, 84 N. E. 291, as construed by the court, was analogous to the one in the case at bar, to the extent, at least, that nothing was provided therein which was not provided for by law. Yet the court in that case held that notwithstanding the contract to adopt had not been performed by taking the necessary statutory adoption proceedings, the contract would be enforced, the court saying:

" 'Her dower right,' therefore, was to be such a right 'to,' not in, the property of Mr. Ordway, 'as if she were his own legitimate offspring.' What is that right? Simply the right of inheritance, which a child has according to the laws of the state, provided the father dies intestate."

In Horton v. Troll, 183 Mo. App. 677, 167 S. W. 1081, the agreement to adopt was performed in all respects except to execute the deed of adoption, acknowledge it, and have it recorded as prescribed by statute. The court said:

"It is sufficient to say that, tested by the many cases which have been before our own courts, it establishes the fact of adoption by acts which estop both Dr. and Mrs. Dunham, and those claiming under them adversely to respondents, from now disputing it. That adoption may be established by acts and conduct, where no legal deed of adoption has been executed and recorded in due form of law, has been settled in our state by many decisions of our Supreme Court as well as of the Court of Appeals. (Citing authorities.)"

In the last-mentioned case the court said that the adopting parents were under no obligation to leave the adopted children any particular share of the estate, but could have disinherited them absolutely had they so desired. The adopting parents, however, having died intestate, the plaintiffs took as children and heirs. Thomas v. Maloney, another Missouri case, reported in 142 Mo. App. 193, 126 S. W. 522, is authority for holding that the appellant may maintain her cause of action under the facts stated. In that case Basely W. Maloney orally agreed with plaintiff's mother to adopt the plaintiff. The statutory requirements necessary to a legal adoption were not performed, but in all other respects adoption took place. The court said:

"Though the petition alleges that Basely Maloney and his wife agreed that they would legally adopt plaintiff, it does not specifically state they agreed to make plaintiff their heir. Doubtless the absence of such promise was what prompted the trial court to sustain the demurrer to the petition. Plaintiff argued that since she fully performed the contract made for her benefit by her dying mother, equity will enforce that contract, though it falls short of meeting the statutory requirements relating to the adoption of children, and, treating her as though she were a lawful child of decedent, will recognize her statutory rights as a pretermitted heir. * * * The courts of this state, under certain circumstances, have enforced oral contracts of adoption, and it may be considered as settled that equity will decree an adoption and its resultant rights in cases where no statutory adoption exists when to do otherwise would result in palpable injustice."

The court further made this significant statement, which is particularly applicable to the case at bar:

"The contract for the benefit of plaintiff made by her mother was valid in equity, and when plaintiff performed it and the foster parents received the benefit of her performance she became, in equity, their adopted child. Equity will treat

as done that which ought to have been done, and as Basley in his lifetime would not have been heard to repudiate the obligation of a contract of which he had received the full benefit, neither will his executors be allowed to stand on ground so inequitable."

The same argument against granting specific performance was made in that case as is made here, viz., that. while courts will decree specific performance of such contracts where property rights are the subject of the contracts, they will not decree performance where the contracts are simply naked contracts to adopt. The answer made to that contention by the court is as follows:

"Defendant argues: 'An agreement for the adoption of a child and to leave property to it when fully performed by the child may be enforced in equity. This is not on the ground that the child has been legally adopted, but because a contract to leave property to the child, when fully performed on its part, may be enforced in equity' (citing 1 Ency. of Law (2d Ed.) 728, which refers to Healey v. Simpson, 113 Mo. 340 (20 S. W. 881.) In that case the contract by which it was proposed to adopt the child provided 'that they (the adopting parents) will govern, educate, maintain, and in all respects treat said child as though she were their own natural offspring; and it is further agreed that said Evangeline Brewster shall have and inherit from the estate of said parties of the second part in the same manner and to the same extent that a child born of their union would inherit.' In effect, this meant that in adopting the child they would give it the status of an issue of their own bodies—no more, no less. A statutory deed of adoption would have conferred on the child these precise rights and nothing more. * * * Without any specific agreement to that effect, a child legally adopted will inherit from its adoptive parents in like manner as their lawful issue. * * * This being true a contract to adopt carries the incidental right of heirship, which, as in the case of a natural child, may be cut off only by the will of the adoptive parent in which the adopted child is mentioned.

"It follows from what we have said that the controlling consideration in Healey v. Simpson, supra, was not, as we have shown, the incidental promise that the adopted child would inherit as though she had been born of her adoptive parents, but was the agreement to adopt the child, and the subsequent performance by the child of her part of the agreement. In the later case of Lynn v. Hockaday, 162 Mo. 111 (61 S. W. 885, 85 Am. St. Rep. 480), the oral contract to adopt did not mention the rights of the child as an heir, and still that contract was enforced."

The theory upon which Lynn v. Hockaday, cited

supra, was decided appears to have been upon the equitable doctrine mentioned in all of these cases. The court in that case said:

"And as there was no common-law adoption, the argument is that it must be done as the statute requires or it cannot be done at all. But since the statute has made the adoption of a child lawful, the law, for the same reasons that it sometimes enforces oral contracts affecting real estate, will not allow the mere failure of one party to do his duty to work an irreparable wrong to one who has fully performed his part."

Other cases bearing on this proposition, and sustaining the view that contracts to adopt will be specifically enforced upon equitable grounds, are Milligan v. McLaughlin, 94 Neb. 171, 142 N. W. 675, 4 L. R. A. (N. S.) 1134; note to Baumann v. Kusian, 164 Cal. 582, 129 Pac. 986, 44 L. R. A. (N. S.) 756; and Pemberton v. Pemberton, 76 Neb. 669, 107 N. W. 996.

After citing numerous cases holding that there must be at least a substantial compliance with statute of adoption, appellees cite the following cases; Johnson v. Terry, 34 Con. 259; Renz v. Drury, 57 Kan. 84, 45 Pac. 71; Bowins v. English, 138 Mich. 178, 101 N. W. 204; In re Lamb, 140 Iowa, 89, 117 N. W. 1118, 18 L. R. A. (N. S.) 226; Furgeson v. Jones, 17 Or. 204, 20 Pac. 842, 3 L. R. A. 620, 11 Am. St. Rep. 808; Shearer v. Weaver, 56 Iowa, 578, 9 N. W. 907; Long v. Hewitt, 44 Iowa, 363; McCollister v. Yard, 90 Iowa, 621, 57 N. W. 447; Tyler v. Reynolds, 53 Iowa, 146, 4 N. W. 902; Gill v. Sullivan et al., 55 Iowa, 341, 7 N. W. 586; Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130; In re Wallace, 218 Pa. 39, 66 Atl. 1098; Clark v. West, 96 Tex. 437, 73 S. W. 797; McColpin v. McColpin's Estate (Tex. Civ. App.) 77 S. W. 238; In re Stephen's Estate, 83 Cal. 322, 23 Pac. 379, 17 Am. St. Rep. 252; In re Renton's Estate, 10 Wash. 533, 39 Pac. 145; Ex parte Clark, 87 Cal. 638, 25 Pac. 967.

Counsel for appellees also cite the following cases as authority for the proposition that the right of inheritance cannot be conferred by contract, and that legal adoption

is the only method of making a child heir to a stranger:
Jordan v. Abney, 97 Tex. 296, 78 S. W. 486; Albring
v. Ward, 137 Mich. 352, 100 N. W. 609; Bowins v. Eng-
lish, 138 Mich. 178, 101 N. W. 204; Shearer v. Weaver,
56 Iowa, 578, 9 N. W. 907; Willoughby v. Motley, 83
Ky. 297; Renz v. Drury, 57 Kan. 84, 45 Pac. 71; Davis
v. Jones, 94 Ky. 320, 22 S. W. 331, 42 Am. St. Rep. 360;
Anderson v. Anderson, 75 Kan. 117, 88 Pac. 743.

Notwithstanding that the contract to adopt the father
of the plaintiff in this case made no mention of property
rights of the adopted son, we are satisfied that equity
and justice demand the specific performance of the con-
tract, to the end that Frank C. Barney be adjudged the
adopted son of Annie C. Hutchinson, and that the right
of succession of the appellant, the daughter of Frank C.
Barney, be recognized in accordance with the statutes in
such cases made and provided. In so holding we do no
violence to the statutes of inheritance. We simply hold
that equity will consider that Frank C. Barney was in
all respects the legally adopted son of the Barneys, and
that the surviving spouse of Annie C. Hutchinson, as well
as her collateral heirs, cannot be heard to dispute that
which the ancestor would be estopped from asserting.
The laws of inheritance consequently are not impaired,
but follow their natural course. They operate upon the
relation created by the contract the same as though the
legal adoption had taken place.

In the case of Anderson v. Blakesly, 155 Iowa, 430,
436, 136 N. W. 210, 212, cited supra, the court, speaking
to the relief which courts should decree in such cases as
this, said:

"The agreement in this case was to establish the plaintiff in
a relation in which she would have the rights of a child which
would include the right of inheritance. This was not done
effectually, and, while the court cannot execute the intent and
by its judgment establish plaintiff in the legal status of a
child of the foster parents, it can give her a remedy against
the estate of the grantor in the deed of adoption, thereby

affording her a measure of compensation for that of which she was deprived without fault on her part. What she would have inherited had the undertaking to adopt been made effective is the entire estate left, * * * and the award of nothing less than this will make good to her the pecuniary loss she has sustained."

See, also, Crawford v. Wilson, cited supra.

The cases we have cited herein speak for themselves, and it is unnecessary to enter into a discussion of the proposition submitted at greater length.

For the reasons stated the trial court was in error in sustaining appellees' demurrer to the evidence, and the judgment of the trial court will therefore be reversed, with directions to grant appellant a new trial, and to proceed in accordance with this opinion, and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.