No. 33,864

PAUL DENT, a Minor, by RAY DENT, His Father and Next Friend,
*Appellee,* v. INEZ MORTON et al., *Appellants.*

(79 P. 2d 875)

Opinion filed June 11, 1938.

*Walter B. Patterson,* of Fort Scott, *Kenneth H. Foust,* of Iola, *Guy Lamer* and *DeWitt M. Stiles,* both of Iola, for the appellants.

*L. T. Cannon,* of Humboldt, and *Stanley E. Toland,* of Iola, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff brought his action for specific performance of a contract with a person since deceased whereby he was to receive real and personal property. Certain of the defendants demurred to his petition, and their demurrer being overruled, they appeal to this court.

Omitting formal allegations, the petition alleged that plaintiff was a minor eighteen years of age; that Ellen Amelia Shelton Gifford died August 1, 1936, leaving a last will, since duly admitted to probate, under which she devised her farm to her niece, the defendant Ione E. Snyder, and that she died intestate as to the remainder of

her property, and that defendant G. E. Pees was appointed administrator with the will annexed of her estate. Allegation was also made as to the persons who survived her, and who, by reason of the postnuptial contract hereafter mentioned, would be her heirs at law, all of such persons being made parties defendant. Her husband, Burton C. Gifford, was not made a party defendant. It was further alleged that Ellen Amelia Shelton Gifford was a resident of LaHarpe, Allen county, for many years; that she had been twice married, that her first husband died in 1934, at which time she was about 75 years of age; that she had no relatives living in or about her home and that none of them visited or communicated with her except the defendant Ione Snyder; that she soon tired of living alone and married Mr. Gifford, a neighbor; that they did not get along well and he frequently left for considerable periods of time, and on August 1, 1935, they entered into a postnuptial contract, a copy of which was made a part of the petition. The general purpose of this contract was to provide that each was to control his own separate property, with right to dispose of it, and upon death of either party, the survivor took nothing, each having the right to dispose of his or her property by will, and—

"the separate property of each party hereto shall go and descend to the legal heirs of said decedent as if the parties had never been married to each other." ·

It was further alleged after the making of the agreement Mr. Gifford spent considerable time away from their home, during which time Mrs. Gifford was left alone, and that when he was at home they were not always congenial and there was quarreling between them, which continued until the following occurred: Mrs. Gifford had never made a habit of visiting with her neighbors, but remained close to her own home, and had no close friends. On account of the death of her first husband and the absence of her second husband, she was lonely and without companionship and had no one to take her places and care for her, and about March 1, 1936, she commenced verbal negotiations for the plaintiff to come and make his home with her for the remainder of her life, and in consideration of his doing so she would buy him a car, clothe, keep and educate him and at her death he should have all of her real and personal property except the farm which she had willed to her niece, the defendant Ione E. Snyder, and that about March 23, 1936, after consideration, he accepted her offer; that to show him her right to make such a contract she delivered to him the postnuptial

contract above referred to, which he retained; that at the time he made his verbal contract with her he was a junior in the high school at Chanute, Kan., and had attended there since his freshman year; that during the summer months and while attending school he had worked at a certain grocery store, but upon accepting Mrs. Gifford's proposition he quit his job, withdrew from school, and moved to her home in La Harpe; that he immediately entered the high school there and continued until the end of the school year; that on March 26, 1936, Mrs. Gifford purchased a Ford coupé, the title to which was taken in her name, as plaintiff was not to have her property until her death, the automobile being used for taking her riding, to places where she wished to go and for her own pleasure and enjoyment. It was further alleged that when the verbal contract was made Mrs. Gifford was in good health and free from any serious illness or disability; that suddenly and without warning, about July 25, 1936, she became seriously ill, and she was taken to a hospital at Iola, Kan., where she was operated upon the day she was taken there, and later, and on August 1, 1936, she died; that pursuant to the contract, during the time plaintiff was in her home he was her constant companion, devoted all his time outside of school hours to her, took her riding and to such places as she wished to go from time to time, was kind and obedient to her, and did all he could to make her life cheerful and enjoyable, and when she became ill he obtained medical attention for her, and after she was taken to the hospital he visited her daily. It was further alleged that plaintiff had fully and completely performed his part of the contract with Mrs. Gifford and was entitled to have the contract specifically performed; that he had possession of the above-mentioned automobile and constructive possession of her home, and her administrator had possession of all other property as to which she died intestate; that an inventory and appraisement on file in the probate court showed the value of all her real and personal property at her decease, except the farm devised to defendant Ione E. Snyder, was $6,540.21; that the administrator had collected certain rents on real estate subsequent to her death. The prayer of his petition was for specific performance of the contract, for decree adjudging him to be owner, barring all defendants, and for such further relief as plaintiff may in equity and good conscience be entitled.

Three of the defendants named as heirs of the decedent demurred to the petition on the grounds the court had no jurisdiction of the

subject of the action and that the petition did not state facts sufficient to constitute a cause of action. The defendant administrator filed a like demurrer. These demurrers were overruled and the demurring defendants appeal.

The first ground of the demurrer was that the trial court had no jurisdiction of the subject of the action. The argument in support seems to be based partly on the ground that appellee had a remedy in the probate court, a matter which will be referred to later, and partly on a claim the contract in question was only partly performed. The petition alleges full performance, and for our purposes here that is admitted by the demurrer, hence *Bahney v. Gross*, 135 Kan. 446, syl. ¶ 3, 10 P. 2d 844, has no application. However, that case recognizes the rule in *Anderson v. Anderson*, hereafter referred to. Appellants also cite *Johnson v. Lander*, 140 Kan. 329, 36 P. 2d 1006. In that case claimants filed their claim in the probate court. Defendants there contended the plaintiffs were seeking to specifically perform a contract, and that the district court was the proper forum. A review of some of our decisions respecting jurisdiction of the probate and district courts was made, and it was held that the claimants there were not seeking equitable relief. In that case it was held:

"The probate court is the proper forum for establishing a claim against a decedent's estate for services rendered by the claimant to the decedent in his lifetime, unless the claim shows on its face that equitable considerations enter into its allowance or the title to real estate is involved." (Syl. ¶ 1.)

And there is nothing in *Kothman v. Markson*, 34 Kan. 542, 9 Pac. 218, which leads to a conclusion that the district court is without jurisdiction to entertain an action such as is alleged in the petition now before us. It must be conceded here that equitable principles are involved and hence the district court had jurisdiction.

Under the other ground of the demurrer, *i. e.*, that the petition does not state facts sufficient to constitute a cause of action, five different questions are presented which will be noticed hereafter. Before proceeding to a discussion of these questions, it may be observed that the petition states a cause of action for some relief. Perhaps on trial, and in view of the law as applicable to the facts which may be established, the plaintiff may not have specific performance, but that would not mean he could not have compensation if he could establish value for services rendered. In such a view the petition states a cause of action. However, we shall discuss later the questions presented. And the following observations may also be made.

We have many decisions touching various phases of actions wherein it was sought to specifically perform contracts to make wills, convey property, etc., in consideration of services to be rendered during the lifetime of the promissor. On the general subject, one of our leading cases, often cited, is *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743, wherein it was held:

"Whether equity will decree the specific performance of a contract rests in judicial discretion and always depends upon the facts of the particular case. As a rule, when a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on account of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable." (Syl. ¶ 1.)

In the present state of the case before us, and on the theory specific performance alone was sought, the contract is admitted, as is the performance of the promisee, and before we can say the trial court erred in overruling the demurrer, we must be able to say, as a matter of law, that the petition discloses there was inadequacy of consideration and circumstances and conditions which render enforcement of the contract inequitable.

Appellants argue that the early death of the promisor prevents enforcement of the contract, and they direct our attention to the early case of *Baldwin v. Squier*, 31 Kan. 283, 1 Pac. 591, wherein the period in which services were performed did not exceed eighteen months, and where it was held:

"Where A, the owner and in possession of a tract of land, made a parol contract with B that if she would come and live with and take care of him till his death he would give her the land, and in pursuance of such contract she came, lived with and took care of him till his death; and where there was no contract in reference to making a will; and where it does not appear that there was any difficulty in estimating the value of B's services prior to A's death, the same taking place within a year and a half, *held,* that there was no such part performance as took the case out of the scope of the statute of frauds." (Syl.)

And, also, to *Hazleton v. Reed*, 46 Kan. 73, 26 Pac. 450, where the period of service involved was about eighteen months. A reading of the last case will disclose that it is hardly in point here, as was pointed out in *Bless v. Blizzard*, 86 Kan. 230, 234, 235, 120 Pac. 351, a case much more like the one at bar. Appellant also refers to *Bahney v. Gross*, 135 Kan. 446, 10 P. 2d 844, contending the principle of the case is controlling. In that case it is recognized that the rule in *Anderson v. Anderson* has been consistently followed. Ap-

plication of that rule showed the petition there involved was demurrable because the promisee had not performed fully, had received some monthly compensation, and if he had anything due him it was the basis of a claim in the probate court. The petition now before us does not show a like situation. Application of the principle of that case leads to the conclusion that mere early death of the promissor did not deprive the promisee of his right to specific performance.

Appellants also contend the value of the services rendered can be readily ascertained and compensated, and appropriate relief given appellee upon his filing a claim in the probate court, and that the services rendered are not extraordinary or unusual in their nature. We have some difficulty in seeing how these questions may now be determined as a matter of law in view of the allegations of the petition, which are here entitled to a liberal interpretation in favor of the pleader, who was not compelled to plead his evidence, whatever it may be on a trial of the action. Each case of this type varies from the others. In *Bless v. Blizzard,* supra, the contract was between an elderly man and his young nephew, who was "to stay with and care for" his uncle, in consideration for which the nephew was to receive certain property. The uncle died in about eighteen months. In an action to enforce the contract it was contended the contract was without adequate consideration and was inequitable because of the shortness of time. This court said:

"The evidence shows that Noel was seventy years old and was afflicted with physical maladies which made close association with him repellent, and at the same time placed him in need of personal care and attention. His home was broken up. His wife and daughter were turned against him. He might live a long time, but he was not a sufferable addition to the family of any friend, and to others he was impossible. Bless was a young man of twenty-three years, apparently of the normal type, including the disposition to be loyal to one who had stood in the place of a father toward him. He was the one person to whom Noel could turn for care and attention touched and sweetened by that personal regard which fortifies considerate and patient endurance of unpleasant and even nauseating tasks, and which money cannot buy. So Noel said to Bless, 'Stay with me and care for me until I die and I'll will you my land.' Bless consented, and thereby, for a time as uncertain as the duration of Noel's life, cut himself off from the pleasures, the prospects and the opportunities of a young man of his station and took upon himself the burden of Noel's care through trying days and more trying nights—a renunciation and a task not easy of estimation according to exact pecuniary standards. The case therefore is one in which the consideration for the contract lies in the breadth and scope of the undertaking, rather than in the fact of service for a particular time." (p. 233.)

And *Hazleton v. Reed* was commented on and its inapplicability to the facts noted.

A somewhat similar contention was made in *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571, wherein it was said:

"Appellants argue the value of the services shown to be performed by plaintiff readily could be ascertained and paid in money; that they were inconsequential compared to the value of the property; hence, it was error to decree specific performance of the contract, citing on this point *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Woltz v. First Trust Co.,* 135 Kan. 253, 261, 9 P. 2d 665; *Laupheimer v. Buck,* 135 Kan. 631, 637, 11 P. 2d 721. These authorities are to the effect that courts of equity will decline to decree specific performance where the services performed, or to be performed under the contract, are inconsequential compared with the compensation to be paid. In applying that principle, however, courts are reluctant to make new contracts for parties. In this case the court cannot say that the contract, when made, was so inequitable in this regard that it should not be enforced. At the time the contract was made Herman Rehberg was seventy years of age. Generally speaking, his health was good, aside from his attacks of heart trouble, the seriousness of which possibly none of the parties realized, and which perhaps he discounted. He might have lived ten or even twenty years, and his health might have been such that the care required would have made the compensation agreed to be paid and accepted look meager. In that event perhaps appellants would have been glad there was a limitation placed in the contract upon the amount plaintiff was to receive. It is only because his death occurred a little less than two years after the contract was made that the compensation seems large. No doubt the fact that he had made a suitable provision for his care for the remainder of his life, whatever time that might be, for a definite portion of his property, was a thing he regarded as of value. The trial court did not regard the value of the property to be left plaintiff so out of proportion to the services to be performed under the contract, and which were performed, as to justify refusing specific performance. This, also, was the view of the advisory jury. The disproportion is not so great that we should say, as a matter of law, the contract made should be disregarded, and that plaintiff should have presented her claim against the estate for services performed. She is not a person who had been accustomed to work for wages in the homes of others." (p. 183.)

In *Bateman v. Franklin,* 114 Kan. 183, 217 Pac. 318, a youth of 16 years went to live with his uncle and aunt under an agreement that if he would do so, live with them as a member of the family, assist in the farm work and stay until he was twenty-one, he should have certain property. After their deaths, he sought to enforce the contract. In disposing of the cause it was said:

"The contract, though oral, had been fully performed on plaintiff's side, so the statute of frauds, which was not pleaded, would not bar the action. (*Meador v. Manlove,* 97 Kan. 706, 711, 712, 156 Pac. 731.) Though the time of

performance on the part of the uncle and aunt could not be definitely fixed, the time might have matured within a year by their death. (*Dubbs v. Haworth,* 102 Kan. 603, 171 Pac. 624.) There was no breach, and there could not well have been a breach (except perhaps by dissipation of all the money received from the sale of the farm) until the death of the surviving promisor. Nor was there anything inequitable about the contract to deny its enforcement. Rather the contrary. This plaintiff, in his callow years, was induced to leave his father's rooftree and the society of his own family, and take up his abode and adjust his habits and inclinations to conform to the rules and customs of his uncle's household, and to render the service and obedience of a dutiful child to them during his minority. Why is he not entitled to receive his due? Courts are instituted for the administration of justice, not to withhold it. Of course, this is the sort of case where the triers of the facts, and especially the trial judge, must be alert to see that estates are not plundered through false and fraudulent claims, and where there must be careful and conscientious sifting of the evidence. But such claims may be *bona fide,* and when they are such and are established by clear and convincing evidence, they are perfectly legitimate and must be respected and enforced. (*Baldwin v. Baldwin,* 73 Kan. 39, 46, 84 Pac. 568; *Meador v. Manlove,* supra, 713; *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354.)" (p. 184.)

Among other cases, appellants direct our attention to *Renz v. Drury,* 57 Kan. 84, 45 Pac. 71, as supporting their contention that the value of services rendered, if any, is easily ascertainable, and therefore the petition states no cause of action for specific performance. In that case the claimant had been taken into the home of the claimed promisors when a mere infant, and did not know she was not their own child until she was about fourteen years of age. She was permitted on the trial to testify that her foster father then told her that if she would remain in the home she should inherit one half of their property. In this court the judgment of the trial court in her favor was reversed for error in admitting the above-mentioned conversation, because no legal adoption was proved, and for the reason that:

"Specific performance of a parol agreement to make a foster child, not legally adopted, an heir, in consideration of her personal services, will not be enforced as to real estate not owned by the foster parents at the time of the agreement, when the value of such services is easily ascertainable." (Syl. ¶ 3.)

the court in the opinion saying:

"In the present case, the value of the services of Virginia from the time that said contract was made until she married was easily ascertainable, and might have been recovered on a *quantum meruit,* as held in *Wallace, Administrator, v. Long, Guardian,* supra." (p. 89.)

However, in *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743,

heretofore referred to, it appeared that claimant's parents and the promisors had made an agreement whereby the promisors were to take claimant into their home in all respects as their own child and she was to be left all property of which they died possessed. The claimant brought suit for specific performance and recovered. In discussing her rights, this court said:

"We cannot agree with the contention of the defendants that the terms of the contract are incomplete and uncertain. Its terms provided that the Palmlunds were to receive Hilda Anderson at the age of eight years into their home; to care for, raise and educate her; to have her custody and control; and, in consideration of these benefits, and the opportunity thus afforded them to gratify their parental love and to receive her obedience, society and services in all respects as though she were their own child, they agreed that she should be given whatever property they possessed when they died. The parents, in consideration of the future benefits to their child, surrendered the possession and control of plaintiff. She performed her part fully. The contract, then, so far as plaintiff is concerned, has passed from an executory to an executed one. All the authorities to which we have referred sustain the doctrine that a contract of this nature will be enforced when it is not inequitable. . . . . We do not regard *Renz v. Drury,* 57 Kan. 84, 45 Pac. 71, as laying down the hard and fast rule that a court of equity should never compel the specific performance of a parol contract of this character, but rather as an illustration of the doctrine, recognized almost universally, that each case depends upon its own particular facts and circumstances, and the granting or denying of the remedy rests in judicial discretion." (pp. 128, 129.)

And in *Bray v. Cooper,* 145 Kan. 642, 66 P. 2d 592, the fact that love and companionship of a child cannot be accurately measured in money was recognized. It is deducible from the above that there may be serious questions under certain circumstances whether companionship, affection and devotion can ever be measured in terms of dollars. Services of the above kind are often of such a peculiar character that it is difficult, if not impossible, to measure their worth with a pecuniary standard. Whether the desire of the promissor was to obtain companionship, affection and devotion, or mere help in performance of some household or other task, is a matter for consideration by the trial court. To some extent, at least, the question is whether the promissor here by her agreement received what she desired.

Space forbids a detailed analysis of other decisions of our court and of the courts of other jurisdictions cited by the parties in connection with the last-mentioned contentions. Attention, however, is directed to the exhaustive annotations on remedies for breach of

decedent's agreement to devise, bequeath or leave property as compensation for services found in 69 A. L. R. 14 and 106 A. L. R. 742. It may be that on a trial of the action the appellee will not be able to prove fully the allegations of his petition. We are not now concerned with that. He does allege, however, and those allegations are all that are now before us, that Mrs. Gifford, being lonely and without companionship, and having no one to take her to such places as she wished to go, offered that if he would come and make his home with her so long as she should live, she would give him certain property, and that he fully performed. That we must take as the fact. Had she lived for eight or ten years, could anyone say the appellee in equity and good conscience should not have that for which he bargained? He further alleges she was in good health when the contract was made, and that her death in about four months was sudden and unexpected. Is he entitled to any less for that reason? We do not believe that it should be so said as a matter of law.

Appellants also contend that because, as they say, the money value of appellee's services is easily ascertainable, it would not be inequitable or constitute a fraud on appellee if specific performance be denied. What has been said heretofore is deemed a sufficient answer, and the same may be said as to the contention that the consideration of the contract is not adequate to support an action for specific performance.

We think it may not be said that the petition does not state a cause of action.

The rulings of the trial court on the demurrers to the petition were correct, and are affirmed.

HARVEY, J., dissenting.