No. 33,306

Osie Bray, *Appellee*, v. Charles Cooper et al., *Appellants.*

(66 P. 2d 592)

Opinion filed April 10, 1937.

*Lee E. Weeks, J. E. Schroeder,* both of Kansas City, and *C. S. Denison,* of Pittsburg, for the appellants.

*D. G. Smith,* of Girard, *C. O. Pingry* and *Carl Pingry,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This suit was based on two causes of action. The first was for specific performance of an oral contract, according to which plaintiff was to have the property of deceased at her death. The second was to set aside a will on the ground of restraint, undue influence and mental incapacity, which will was inconsistent with the alleged contract. The trial court found in favor of plaintiff on the first cause of action and against her on the second, except insofar as the will infringed on the obligations of the contract. From that ruling all defendants except the First Christian Church of Pittsburg appeal.

Defendants were the parties who claimed under the provisions of the will. The First Christian Church of Pittsburg, two nephews and plaintiff, a niece of the deceased, Lottie Worthington, were each bequeathed $100. The remainder of the estate was left to Charles

Cooper, a brother, a sister and another niece. The husband of Lottie Worthington had predeceased her. She had no children.

Appellants list eight specifications of error, but argue only one on this appeal, namely, the alleged error in overruling their demurrer to plaintiff's evidence. Appellee contends the appeal should be dismissed for the reason the appeal was not perfected within six months after the ruling on the demurrer. Owing to the status of this particular record we prefer to dispose of the case on its merits. We may therefore turn at once to the error urged.

Plaintiff's maiden name was Osie Cummings. She married a man by the name of Bray. The deceased was the aunt of plaintiff. The trial court made findings of fact and conclusions of law. The findings made present a sufficiently clear picture of the facts and circumstances to render a further statement of the facts unnecessary. The findings of fact and conclusions of law on the first cause of action were:

### "FINDINGS OF FACT

"1. That William Worthington and Lottie Worthington were husband and wife prior to and after 1903, and up until the time of the death of William Worthington; that William Worthington died about December 10, 1934, and Lottie Worthington died about April 1, 1935; that Harry Cummings and Alice Cummings were the father and mother of the plaintiff Osie Bray, and Alice Cummings, the mother of Osie Bray, was the sister of Lottie Worthington and sister-in-law of William Worthington, and the plaintiff Osie Bray, nee Cummings, was the niece of William Worthington and Lottie Worthington; that Alice Cummings and Harry Cummings were divorced about 1903; that Alice Cummings, plaintiff's mother, predeceased William Worthington and Lottie Worthington; that at the time of Lottie Worthington's death she left surviving her, as her heirs at law, the defendants, her brother, Charles Cooper; her sister, Maggie Burke; her nephew, Charles Stanlick; her nephew, Ellis Fossman; and the plaintiff, her niece, Osie Bray.

"2. That about December 31, 1934, Lottie Worthington made or attempted to make a will in which she purported to give to the plaintiff, Osie Bray, $100; to the defendant, Charles Stanlick, $100; to the defendant, Ellis Fossman, $100, and to the defendant, First Christian Church of Pittsburg, Kan., $100, and all the remainder and residue of her estate to the defendants, Maggie Burke, Charles Cooper and Hazel Greenwood, to be equally divided among them, share and share alike; that said will was admitted to probate on or about April 11, 1935, and Charles Cooper, who was named in said will as executor, was appointed executor and is now acting as executor under said appointment.

"3. That Lottie Worthington owned, at the time of her death, lot 128, Playter's addition to the city of Pittsburg, Kan., the value of which is not disclosed by the evidence, and personal property of the value of about $4,524.43.

"4. After the parents of plaintiff were divorced, about the year 1903, when

the plaintiff was of the age of eight years, she was left by her parents in the care and custody of Lottie Worthington and William Worthington, who were at that time childless; that about the year 1906 the plaintiff's mother married Richard Fossman and reëstablished a home, and after doing so the said mother went to the home of the Worthingtons for the purpose of taking the plaintiff home with her; that the plaintiff had lived with and made the home of the Worthingtons her home from the time that she was first given into their custody by her parents until her mother came to take her to her home, a period of about three years, and during said three years the Worthingtons had become greatly attached to the plaintiff, and did not want to give up her care and custody; that when plaintiff's mother came to take plaintiff to her home, Lottie Worthington and William Worthington proposed to plaintiff's mother that if she would let Osie, the plaintiff, stay there with them and let them have control over her and not interfere with her in any way, that they would raise Osie as their daughter until she was of age, or as long as she wanted to stay with them, and that when they were dead they would leave everything they had to Osie, and plaintiff's mother agreed to let Osie stay with the Worthingtons under such conditions and relinquished to the Worthingtons her right to care, custody and control of plaintiff; that thereafter the plaintiff lived with the Worthingtons and was treated and loved by them as their daughter, and the plaintiff treated the Worthingtons as her parents and gave to them the services, affection and obedience of a daughter; that the plaintiff lived in the home of the Worthingtons until her marriage in 1915, and after that at various times the plaintiff and her husband lived with the Worthingtons and visited with the Worthingtons and the Worthingtons visited with the plaintiff and her husband at various places, and that during all of said time up until the time of the death of the Worthingtons the plaintiff was treated as the child of the Worthingtons and was referred to, particularly by Lottie Worthington, as her child, and the plaintiff and her husband were referred to by Lottie Worthington as her children; that the plaintiff broke an engagement with one John Fossman because the Worthingtons did not approve of the match and, at the time of plaintiff's marriage in 1915, the plaintiff, in obedience to the request of Lottie Worthington, was married in her home as her own daughter; that Lottie Worthington told several persons, among them being plaintiff's husband, Roy C. Bray, and the former fiancée of the plaintiff, John Fossman, and a friend of Mrs. Worthington's, May Bray, and a former suitor of plaintiff, Clarence Ogan, of the agreement that she would raise the plaintiff like her own daughter and that at her death all of her property was to be the plaintiff's; that in addition to making statements as to the contract, Lottie Worthington stated to many other persons that she had taken Osie as her daughter and that what was hers (Mrs. Worthington's) was to be Osie's some day.

"5. That after the contract was made, neither of plaintiff's parents in any manner exercised or attempted to exercise any care or control over the plaintiff, nor had either of said parents the custody of plaintiff at any time, nor in any manner contributed to her support or education, and that after the said contract was entered into, Lottie Worthington and William Worthington exercised the care and control over the plaintiff the same as they would have exercised over their own child.

"6. That after plaintiff's marriage she at times lived with Lottie Worthington and William Worthington and made frequent visits to the home of Lottie Worthington and William Worthington, looking after their comfort and performing such offices of love and affection as a child naturally would toward its parents, and the Worthingtons frequently visited the plaintiff after her marriage and treated her and loved her as their own child, and there was nothing to indicate, by the evidence in this case, that at the time of the death of either of the Worthingtons there was anything to change or alienate that feeling of love and affection which they had exhibited to the plaintiff during all of the years she was in their custody and after her marriage.

"7. That the contract alleged in plaintiff's petition between plaintiff's mother, Alice Cummings, and Lottie Worthington and William Worthington was made and was kept in good faith by plaintiff and her mother and said contract was fully performed on the part of plaintiff and her mother; that the contract is reasonable and equitable in its terms and was freely and fairly entered into between the parties.

"8. That the services, love, affection and obedience of plaintiff for the Worthingtons were such that the same cannot be compensated for in money.

"9. The issues joined in this case on the first cause of action are found in favor of the plaintiff and against the defendants."

### "CONCLUSIONS OF LAW

"1. Plaintiff is entitled to the specific performance of the contract entered into between her mother and Lottie Worthington.

"2. Plaintiff is the legal owner and entitled to the possession of all of the property and estate, real, mixed and personal, of every kind, of the estate of Lottie Worthington, deceased, and is entitled to have and to hold the same free from any claim or right of the defendants, or any of them."

The findings of fact and conclusions of law on the second cause of action were:

### "FINDINGS OF FACT

"1. That at the time that Lottie Worthington made a will, on December 31, 1934, she had mental capacity to make a will and did not make such will under restraint or undue influence.

"2. That the will of Lottie Worthington is in violation of the obligations of the contract made between Lottie Worthington and plaintiff and plaintiff's mother, Alice Cummings, and said will is invalid and unenforceable insofar as it impinges upon the obligations of said contract."

### "CONCLUSIONS OF LAW

"1. That the will of Lottie Worthington is valid as to the first clause of said will in reference to the payment of debts of Lottie Worthington and as to the appointment of Charles Cooper, as executor, and invalid and unenforceable as to the balance of said will, the same being in violation of the terms of the contract between the testator, Lottie Worthington, and plaintiff and her mother, Alice Cummings."

The remaining conclusions of law vested title to all of the property of deceased in plaintiff and enjoined defendants from seeking

possession of the property and enjoined the executor from making distribution under the terms of the will, except to plaintiff and for the payment of debts and costs of administration.

In passing on a demurrer to evidence the court, of course, is concerned only with evidence and reasonable inferences therefrom which support a cause of action or defense. (*Meneley v. Montgomery,* 145 Kan. 109, 64 P. 2d 550, and citations; *Schuler v. Rehberg,* 145 Kan. 176, 179, 64 P. 2d 571.) Examination of the record discloses plaintiff's evidence sustained the findings of the trial court.

Appellants, however, contend the evidence must show a definite contract, the contract must be clearly and certainly established and must be equitable in its provisions. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Pantell v. Bower,* 104 Kan. 18, 178 Pac. 241; *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665.) Concerning these general principles there is no question. The difficulty arises in connection with their application to the particular facts in each individual case. The duty of weighing the evidence and determining its sufficiency primarily is that of the trial court. (*Schuler v. Rehberg,* supra.) In the Woltz case, *supra,* many cases were collated for and against the sustaining of such contracts. It is deemed unnecessary to review and analyze here the facts in these numerous cases. The principles applicable have been frequently stated and were again discussed in the most recent case of *Schuler v. Rehberg,* supra.

As stated, appellants seriously contend the contract was not definite in the instant case. The contention is based on the fact the alleged contract did not require plaintiff to remain with deceased and that she was at liberty to leave at any time. The portion of the contract referred to provided:

"Uncle Will and I will raise Osie as our daughter until she is of age or as long as she wants to stay with us, and when we are dead everything we have got will be Osie's."

The quoted provision may also be interpreted to mean plaintiff would be permitted to stay as long as she desired, after she became of age. It cannot be said, however, that plaintiff did not in fact perform before she became of age. She lived with deceased from the age of eight until the contract was made about four years later. That status continued until her marriage in the home of the deceased at the age of nineteen. In the light of these facts the possible want of mutuality complained of became immaterial. What-

ever lack of mutuality existed in the contract when executed was completely cured by subsequent performance and no longer existed at the commencement of this action. (*Nelson v. Schippel*, 143 Kan. 546, 551, 552, 56 P. 2d 469.) The statute of frauds was thus no bar to the enforcement of the contract. (*Smith v. Nyburg*, 136 Kan. 572, 576, 16 P. 2d 493; *Schuler v. Rehberg*, supra.)

Appellants earnestly press upon our attention the fact the trial court found testatrix possessed mental capacity to make her will, and the further fact that she bequeathed to plaintiff only the sum of $100. It is urged this was the best evidence no contract existed. Appellants further forcibly remind us that the testatrix was a religious woman and her character stood unimpeached. In view of these facts, appellants quote from an exhaustive note on the subject found in the annotation in 69 A. L. R. as follows:

"The fact that the alleged oral contract is out of harmony and inconsistent with a will made by the promisor subsequently to the time it is alleged that he entered into the contract in question, is entitled to be taken into consideration as bearing upon the improbability of the contract having been made as alleged." (p. 210.)

We are impressed with appellants' contention, but on review we are obliged to assume the trial court did consider these facts, together with the testimony of plaintiff and the generous supply of corroborating testimony concerning the existence of the contract. Concerning that feature of the case, the annotation cited by appellants states the rule thus:

"The fact that the promisor subsequently changed his mind and executed a will devising to another the property which he had agreed to devise to the promisee, does not deprive the latter of the right to enforce the previous contract fully performed on her part, if it is established by clear and satisfactory evidence." (p. 210.)

The evidence was sufficiently clear and satisfying to convince the trial court the contract had been made. In the light of this record, we cannot well distrub that express finding.

Did plaintiff have an adequate remedy at law? The contract was not made until plaintiff had lived with deceased for about four years. By that time the aunt and uncle had become greatly attached to her. The feeling was mutual. When plaintiff's mother was again married and established a home she came for the child. The deceased and her husband, by reason of the mutual attachment, desired to keep her. The desire to have the child does not appear to have been based so much on the services to be rendered by the

child as it was to retain the love and companionship of the child. That sort of thing cannot be accurately measured in cold money.

Appellants urge this type of case has been recognized as a great temptation for fraud. That is true. As heretofore indicated, however, the trial court is just what the name indicates. It is the trier of the facts, and under the facts in this case we cannot disturb the judgment. It is therefore affirmed.