No. 34,358

PAULINA POPP, *Appellee*, v. LEAH WILHELM et al. (PHILLIP MILLER,
E. J. MILLER and HENRY MILLER), *Appellants*.

(96 P. 2d 620)

Opinion filed
December 9, 1939.

*R. C. Russell* and *John Henry Lewis,* both of Great Bend, for the appellants.

*Roy J. McMullen, William Osmond, T. B. Kelley* and *Fred L. Conner,* all of Great Bend, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This case was begun on two causes of action: one to set aside a will on account of lack of testamentary capacity, the other to enforce an oral contract to devise real estate. A demurrer of defendants to the evidence in the first cause was sustained and no appeal was taken. In the other case judgment was for plaintiff. Defendants appeal.

The plaintiff is the daughter of Maria Elizabeth Miller. The defendants are the other heirs at law of Mrs. Miller and certain other parties with whose identity we are not concerned.

After alleging the addresses of the various parties, the petition in the first cause of action alleged that Mrs. Miller died on March 9, 1937, the owner of two eighty-acre tracts of land and a town lot, describing them. The allegations in this cause with reference to the

lack of testamentary capacity will not be set out here, since we are no longer concerned with it.

The petition in the second cause of action made the allegations in the first petition a part thereof and then alleged that in the lifetime of Mrs. Miller she made her home with plaintiff on a certain quarter section of land, describing it; that plaintiff took care of her mother and in consideration of one dollar and love and affection Mrs. Miller conveyed to plaintiff two hundred and forty acres of land, reserving to herself a certain interest during her lifetime; that after the execution of this deed Mrs. Miller informed plaintiff that her other children were mad at her for having deeded this land to plaintiff and requested plaintiff to redeed eighty acres of this land back to her, and informed plaintiff that if plaintiff and her husband would deed this eighty acres back to her she would will this particular eighty to plaintiff; that relying on this promise plaintiff and her husband did deed this particular eighty to Mrs. Miller. The petition further alleged that notwithstanding this promise Mrs. Miller willed the eighty acres in question to a son.

Judgment was prayed that the court decree the specific performance of the oral contract pleaded.

The defendants demurred to the second cause of action on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled.

In their answer to the second cause of action defendants first entered a general denial; then they admitted that Mrs. Miller deeded to plaintiff the two hundred forty acres in question, and that plaintiff and her husband conveyed the eighty in question back to Mrs. Miller and that Mrs. Miller devised the eighty acres in question to Phillip Miller, her son, for his use during his lifetime. For further answer, defendants alleged that if any oral agreement was made, as alleged, it was unenforceable under the statute of frauds, and was barred by the statute of limitations and was unenforceable under the provisions of G. S. 1935, 33-105, and was void for want of consideration. The answer also alleged that the action was a collateral attack on the order of the probate court admitting the will to probate, and could not be maintained.

The reply was a general denial of all new matter stated in the answer.

As has been noted, the trial court sustained the demurrer of the defendants to the evidence of plaintiff as to the first cause of action. There is no appeal from that.

As to the second cause of action, the trial court found that during her lifetime Mrs. Miller made an oral contract with the plaintiff, wherein she agreed that if plaintiff would redeed to her the eighty acres in question she would will it to plaintiff on her death, and relying on that promise plaintiff deeded the eighty to Mrs. Miller and Mrs. Miller failed to comply with her contract to leave the land in question to plaintiff in her will.

The court further found that plaintiff had performed all obligations that devolved upon her and that the contract should be enforced and the title to the real estate should be in plaintiff. Judgment was entered in accordance with these findings. The motion of the defendants for a new trial was overruled. Hence this appeal.

The first argument of defendants is that the court erred in overruling their objection to the testimony of P. M. Popp, the husband of plaintiff. The objection was on the ground that the witness was an interested party and was asked about a transaction with a deceased person. The statute relied on is G. S. 1935, 60-2804. It provides, in part, as follows:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person."

The argument of defendants is that the testimony of Popp showed that he was a real party in interest and was seeking, through his wife, to recover the title to the land in question. In order to deal with this argument we must examine the record as to the testimony of Popp. He testified, in part, as follows:

"Q. Will ask you if that quitclaim deed, if a quitclaim deed back to your mother-in-law, conveying back to her this particular eighty acres, that was discussed in this other deed, wasn't executed by you and your wife on or about September 2, 1931? A. Yes.

"Q. Now, would like to have you state to the court just how that conveyance back to your mother-in-law happened to be made, if you know? A. I do know.

"(Objected to as being conversation with deceased party by a party in interest.)

"Mr. McMullen: He is not in interest. (Objection overruled.)

"A. Well, she says the other children, they don't like that. They fussed about it, and to keep peace in the family, she wanted us to deed it back to her and she would give it back in a will.

"Q. Did you hear your mother-in-law, Maria Elizabeth Miller, have that conversation with your wife, this plaintiff, Paulina Popp? A. Yes."

Also note—

"Q. How many conversations would you say that you heard Mrs. Maria Elizabeth Miller have with your wife, Paulina Popp, concerning the reconveying back to Maria Elizabeth Miller of this eighty? A. I couldn't say that, but it was quite a few times. Those conversations were had in our house and over to her home. The other children, they fussed about it, she gave her that much land, and she wants that particular eighty acres back, and give it back to her in a will. That is what she agreed.

"Q. As a result of these conversations and these promises as you have stated them, did your wife later deed back to Mrs. Miller this particular eighty acres of land? A. Yes.

"Q. And where was that deed executed, if you know? (Objection as not the best evidence. Overruled.) A. At Mr. Hartman's office in Hoisington.

"Q. And will ask you if any conversation was had at that particular place and time between your mother-in-law, Maria Elizabeth Miller, and Mr. Hartman, as to why this deed was being made? Just answer that yes or no. A. Yes.

"Q. Would like to have you state that conversation to the best of your memory, to the court. A. Mr. Hartman says that not very many children give back anything what they have got, and she says, she agrees—by that time —she says, 'I am going to give that back. I agreed to them I give that back to them in the will.'"

He testified further:

"Q. Will ask you if you heard any conversation concerning this particular land and the deeding of it, between your mother-in-law and Mrs. Wilhelm, her daughter? A. Yes.

"Q. Would like to have you state to the court, to the best of your recollection, just what that conversation was. A. Well, as near as I can remember, Leah, she kind of fussed about it, she didn't had as much like my wife did, and so Mrs. Miller says, 'I got that eighty back in a deed, and I agreed to give them back that in a will.'

"Q. Was this land left back to your wife in the will? A. No."

It will be noted from the pleading and this testimony that the two·hundred and forty acres was deeded in the first place to Mrs. Popp, the plaintiff; that Mr. Popp joined with plaintiff when the eighty was conveyed back to Mrs. Miller; that the contract is alleged to have been made between plaintiff and her mother and the action was brought in the name of Mrs. Popp. Under such circumstances the case of *Bertholf v. Cornel*, 132 Kan. 122, 294 Pac. 673, is in point. There a nephew claimed that his uncle had made an oral contract with him to leave him certain property in return for services. The question in the case revolved around certain deeds purporting to have been executed by the uncle in his lifetime and delivered to the nephew. The wife of the nephew was permitted to

testify as to the contract between her husband and his uncle, even though she was named as a grantee with her husband. This evidence was objected to for the reason urged here. This court held that the statute in question should be strictly construed in favor of the competency of the witness, and held that the wife could testify to a conversation had between her husband and deceased.

In the case of *Schuler v. Rehberg*, 145 Kan. 176, 64 P. 2d 571, the action was to enforce a contract whereby the deceased agreed in his lifetime to leave the "home place" to plaintiff in return for certain services to be performed. When the action was brought after the death of deceased to enforce the contract the contract was proved in a large measure by the testimony of the husband of plaintiff as to conversations he had with deceased in the presence of plaintiff. The admission of this testimony was urged as error. This court held the testimony was admissible notwithstanding the relationship. We have concluded, therefore, that the trial court did not err in admitting the testimony of Mr. Popp.

The defendants next argue that the contract upon which judgment was given was not proved by clear, convincing and satisfactory evidence. Many authorities are cited wherein this court has held that contracts of the sort sued on here must be proven by such evidence. This is undoubtedly the rule. Many times we have examined a record and held that the evidence did not meet this test. We never have done so, however, where the evidence was as direct and positive as it is here.

The trial court is the trier of the facts in this sort of a case, just as in any other. The proof must be clear, satisfactory and convincing to it. (See *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043.) This court will not disturb a finding of fact where it is supported by competent and substantial testimony. (See *Klein v. Blackshere*, 113 Kan. 539, 215 Pac. 315.)

Besides the evidence of Mr. Popp, to which reference has already been made here, Paulina Popp testified as follows:

"Mr. McMullen: Would like to have you repeat the conversation to the court, stating just what was said by your mother and what was said by Mr. Hartman, to the best of your recollection. A. Well, Mr. Hartman said, 'Not very many children would do that, if they got something, they would keep it, they wouldn't give anything back.'

"Q. What, if anything, did your mother say in regard to that? A. She said, if we deed it back to her, she will make a will, and she give it to us in a will."

Also note:

"Mr. McMullen: What, if anything, did your mother say to her? A. Well, she said it wasn't any of the other children's business what she do with her property, and she said she will give it back to us anyhow.

"Q. Did she say how she was going to give it back to you? A. Yes; in her will.

"Q. Just tell the court what was said by your mother to your husband, to the best of your recollection. A. Well, she said if we deed that back to her she would give it back in the will.

"Q. Did she say that a number of times to your husband? A. Yes, she begged until we deed it back to her."

Phillip Wilhelm testified:

"A. My wife, she made a remark that she is giving them practically more than they were entitled to, according to the others. Well, Mrs. Miller said, 'It isn't any of your business and I can do with my property as I please,' and in fact, she said, 'They deeded it back to me, but I'll give it back to them again anyhow,' and of course, she said it in her own language."

Also note the cross-examination of Phillip Wilhelm:

"Q. And that she could give it to the Popps by will or deed, if she so desired; if that was her wish, isn't that what she said? A. Well, sure, that was her wish and not alone her wish, she says she would."

Leah Wilhelm testified with reference to a conversation between herself and Mrs. Miller, as follows:

"Did she say how she was going to give it back? A. In her will."

In this case the contract was a simple one. It was proved by direct testimony. There can be no doubt but what plaintiff performed all the obligations she assumed in connection with the contract. It would have been necessary for the trial court to have disbelieved the direct testimony of more than one witness in order for a different finding to have been made. *Bray v. Cooper*, 145 Kan. 642, 66 P. 2d 592, was an action to establish an oral contract for the devise of property. This court said:

"Appellants, however, contend the evidence must show a definite contract, the contract must be clearly and certainly established and must be equitable in its provisions. (*Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743; *Pantell v. Bower*, 104 Kan. 18, 178 Pac. 241; *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665.) Concerning these general principles there is no question. The difficulty arises in connection with their application to the particular facts in each individual case. The duty of weighing the evidence and determining its sufficiency primarily is that of the trial court. (*Schuler v. Rehberg*, supra.) . . . It is deemed unnecessary to review and analyze here the facts in these numerous cases. The principles applicable have been frequently stated and

were again discussed in the most recent case of *Schuler v. Rehberg,* supra. . . . . Appellants urge this type of case has been recognized as a great temptation for fraud. That is true. As heretofore indicated, however, the trial court is just what the name indicates. It is the trier of the facts, and under the facts in this case we cannot disturb the judgment." (pp. 646, 648.)

Defendants next argue that the plaintiff failed to prove that the contract pleaded and found to have been made by the parties was equitable. In this connection defendants argue that if the reconveyance from plaintiff to her mother carried with it the obligation to redeem or will the property to the plaintiff, then the deed conveyed nothing to the mother except the record title. This situation is made plain through the pleadings and evidence. Mrs. Miller apparently wanted the legal title reconveyed back to her because the other children were quarreling with her about it. Perhaps she thought the rest of them might not find out about the promise to will the property to plaintiff. It was her way of securing peace in her family in her declining years. We see nothing inequitable about it.

The next argument by defendants is that the trial court erred in excluding the evidence of J. H. Hartman. He is the notary public before whom the deeds were executed. It appears that he would have testified about a statement of Mrs. Miller's as to the reason she wanted the deed back to the eighty. No affidavit as to what this testimony would have been was furnished the trial court on the motion for a new trial. The trial court was thus given no opportunity to pass on the admissibility of the evidence at that time. Under such circumstances the refusal of the trial court to admit it cannot now be urged as error. (See *Robinson v. Sullivan,* 127 Kan. 248, 273 Pac. 461, also *Mohr v. Women's Benefit Ass'n,* 134 Kan. 311, 5 P. 2d 789.)

The judgment of the trial court is affirmed.