No. 37,229

MYRTLE JONES, *Appellant,* v. LEONA DAVIS, EDWARD H. DAVIS, COR-
NELIA E. SCHMIDT, VIRGIL N. DAVIS, REX L. DAVIS and DARLENE
G. DAVIS, *Appellees.*

(197 P. 2d 932)

Opinion filed
October 9, 1948.

*D. M. Ward* and *C. W. Ward,* both of Peabody, argued the cause, and were on the briefs for the appellant.

*Braden C. Johnston,* of Marion, argued the cause, and *John E. Wheeler,* of Marion, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action by the plaintiff to quiet her title to real estate later described, against the claims of the widow and children of her deceased brother. The defendants answered, alleging an interest in the lands. The trial resulted in a judgment in favor of the defendants and the plaintiff appeals. The action grew out of the following facts, which are not in dispute.

Wilbur F. Davis, who was living at the time of the trial, was born in 1850, came to Marion county in an early day, and was later married to his wife, Mary. They had two children, a daughter and a son. The daughter, Myrtle, was married in 1913 to John Jones and moved to Missouri. The son, Hervey W. Davis, was born in 1894 and was married in 1916 to Leona Guyot. Five children were born to this marriage and the wife and children survived Hervey W. Davis, who died in 1942. Before 1916 Wilbur F. Davis, by three transactions, acquired title to the southwest quarter of section 28 and to the west half of the southeast quarter of section 28, all in township 21, range 2 east, in Marion county. These lands are hereafter referred to as the 240-acre tract and constitute the subject matter of the action. About the time of Hervey's marriage to Leona, Wilbur F. Davis purchased from one Stone, the east half of the southeast quarter of the above section 28. This land is hereafter referred to as the Stone eighty. All of the above lands were subject to mortgage liens in 1925. On May 18, 1925, Wilbur F. Davis and his wife Mary conveyed by warranty deed to Hervey W. Davis the Stone eighty. The conveyance was subject to three mortgages for $5,000, $1,000 and $500, and the grantee assumed and agreed to pay $4,500 of the described mortgages but "does not agree to pay any mortgage in full." Mary Davis died in 1926, and in 1928 Wilbur F. Davis purchased a residence in Peabody and moved there. Under date of February 22, 1935, W. F. Davis made his last will, giving his daughter Myrtle the southwest quarter of section 28, and his son Hervey the west half of the southeast quarter of the same section. Other provisions need not be mentioned. Under date of March 20, 1944, W. F. Davis entered into a contract with Mrs. John Jones by the terms of which he was to live in "their

home" during his natural life, to receive board, room and care and nursing when necessary, and she was to receive from his estate "a reasonable price" therefor from January 1, 1930, to the time of his death. Under date of February 8, 1947, W. F. Davis conveyed to Myrtle Jones by quitclaim deed the 240-acre tract. The consideration was stated to be "Ten Dollars and other valuable considerations." This deed was promptly recorded in the office of the register of deeds. On April 1, 1947, there was filed in the last-named office the affidavit of Leona Davis, widow of Hervey W. Davis, setting forth an alleged agreement, referred to later, between Hervey W. Davis and W. F. Davis, under which Hervey W. Davis was to receive an undivided one-half of the 240-acre tract.

The instant action was commenced June 21, 1947, by Myrtle Jones as plaintiff against the widow and children of Hervey W. Davis as defendants. In her petition plaintiff alleged that she was in possession and the record owner of the legal title to the 240-acre tract, subject however "to some part of a mortgage covering the above-described real estate, which mortgage also covers certain real estate owned by defendants described as the east half of the southeast quarter of said section 28," and that the defendants claimed some estate or interest in or lien upon the land, adverse to plaintiff, the exact nature of which was unknown to plaintiff but among which was the claim asserted in the above-mentioned affidavit; that the claimed estates, interests or liens constituted a cloud on the title of plaintiff, but that they were inferior and subject to plaintiff's right, title and interest, and that defendants should be compelled to state the exact nature of their claims. Plaintiff prayed that the affidavit be canceled, that she have judgment quieting title, that defendants be barred, and for such other relief as to the court seemed right and proper.

The defendants' answer and cross petition is long and must be summarized. They deny generally and allege that Hervey W. Davis, born April 25, 1894, was the only son of W. F. Davis, who owned the 240-acre tract, and that Hervey during all of his minority remained home and assisted his father, for which he received no compensation; that on May 17, 1916, Hervey married Leona and planned to leave his father's home to make a livelihood for his bride and so informed his father, who was at that time sixty-five years of age; that the father, for the purpose of inducing Hervey to remain with him and to do farm work and to take care of live-

stock, purchased the Stone eighty; that there was placed thereon a mortgage on the above and other lands for $5,000; that Hervey reposed great confidence in his father and followed his advice; that as part of the inducement and in order to secure his son's services, Wilbur F. Davis verbally agreed that Hervey should farm the last described Stone eighty and the 240-acre tract, and from the proceeds the mortgage should be paid as well as the cost of operating the farm, and as a further inducement Wilbur F. Davis agreed he would convey the Stone eighty to Hervey, and further that Hervey would receive for his labor and services and that of his family to be performed, one-half of the 240-acre tract, and that Hervey, relying upon the representations and inducements and the close business and fiduciary relation which had existed between his father and himself, remained upon the farm and performed the services; that such agreement existed up to May 18, 1925, when his father and mother conveyed the Stone eighty to him, subject to the mortgages, and his agreement to pay $4,500 thereon, as heretofore stated, and that pursuant to the agreement Hervey W. Davis performed services, made payments of taxes and of interest and principal on the mortgages. Defendants further alleged that in 1928 Wilbur F. Davis purchased a house in Peabody and moved into the same, at which time the original agreement was reaffirmed, and it was agreed that Hervey should pay, insofar as it was possible from the income, the taxes and interest and such part of the principal as could be spared from income, and for clothing, doctor bills and incidental spending money needed by Wilbur F. Davis, and that the remaining one-half of the 240-acre tract should go to Myrtle Jones, and that Hervey W. Davis performed and in addition supplied his father with meat, dairy products and other articles, and his wife Leona did a portion of the laundry of Wilbur F. Davis, and that the arrangement so made was carried out until February, 1933, when financial conditions prevailing made it necessary to obtain a new loan to avoid foreclosure, and that Wilbur F. Davis and Hervey W. Davis made a mortgage to the Federal Land Bank for $4,500 due over a period of thirty-three years, and a mortgage for $2,200 for a Land Bank Commissioner loan due over a period of thirteen years; that Hervey W. Davis made the payments and paid the taxes due from time to time and did everything on his part to carry out the terms and agreements for the benefit of Wilbur F. Davis up to the death of Hervey W. Davis, elsewhere alleged to have occurred on

February 4, 1942, and that thereafter the defendant heirs at law of Hervey W. Davis have fully performed.

The defendants further alleged that Wilbur F. Davis was ninety-six years of age, and enfeebled in mind and body and incompetent to transact business, and in his dotage, to the extent he was unable to recognize and know his own relatives and friends, and that at the time he executed the deed later mentioned he did not have sufficient mentality to know what he was doing, or to have an understanding of the intent and purport of the deed or to knowingly violate his agreement with his son ·Hervey W. Davis; that after the death of Hervey W. Davis, plaintiff ingratiated herself with Wilbur F. Davis, and exercised dominion over him, and notwithstanding her knowledge of the agreements between father and son, unduly· influenced her father to execute a conveyance of the 240-acre tract to her, knowing at the time he was incompetent, and with intent on her part to injure the defendants. The defendants offered to· carry out all the terms, agreements and obligations imposed upon them by the original agreements pleaded, and they prayed that plaintiff take nothing and that the 240-acre tract be impressed with a trust and that defendants receive one-half of the tract at the death of Wilbur F. Davis, and in the meantime they be permitted to remain in possession pursuant to the agreements alleged, and for such other relief as the court deemed equitable.

The plaintiff's reply made certain admissions not necessary to repeat, in effect denied new matter, and alleged that if the agreements pleaded by defendants were made, they were breached by defendants in that they ceased to farm the tract after January 30, 1947, on which date they sold farm machinery and equipment and procured a third person to farm the land.

Upon the issues joined a trial was had at which considerable evidence was received. The journal entry of judgment recites that on December 8, 1947, the court found that the oral contract pleaded by defendants had been proved, and that its terms were complied with by Hervey W. Davis and the defendants; that plaintiff should be denied the relief prayed for by her, and that the defendant's prayer for relief ·should be granted. The court further found that Wilbur F. Davis did not have sufficient mental capacity to execute the deed from himself to the plaintiff and that the deed should be set aside and held for naught. It rendered judgment that the 240-acre tract be impressed with a trust in favor of the defendants to

the extent of a one-half interest therein, subject to the life tenancy of Wilbur F. Davis; that the deed from Wilbur F. Davis to plaintiff be set aside and held for naught, and that plaintiff pay the costs. Plaintiff's motion for a new trial was denied, and she perfected her appeal to this court, specifying error in particulars which are presented under five headings in her brief.

On many occasions this court has had before it contracts of the general nature of the one now under consideration, and in connection therewith has discussed the nature and validity of such contracts, the sufficiency of pleading and proof of the asserted contract, and whether in equity it should be enforced. In the briefs many of these decisions are cited in support of contentions advanced but limits of space prevent detailed reference to them. Both parties direct our attention to *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665, where the plaintiff was denied relief. In the opinion, prepared by Mr. Justice Harvey, may be found an exhaustive review of our previous decisions, and listing those where relief was allowed and where it was denied. Although reference is made to that opinion for a more complete statement, in effect the court held that it must be pleaded and shown by clear and satisfactory proof that there was a contract, and compliance therewith by the party asserting the same under which, in equity and good conscience, he should possess and enjoy the property as against those who would otherwise be entitled to it. The principles laid down in the above case have been followed in many subsequent decisions, among which are the following: *Smith v. Nyburg,* 136 Kan. 572, 16 P. 2d 493; *Logston v. Needham,* 138 Kan. 439, 26 P. 2d 443; *Johnson v. Lander,* 140 Kan. 329, 36 P. 2d 1006; *Trackwell v. Walker,* 142 Kan. 367, 46 P. 2d 603; *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571; *Dent v. Morton,* 148 Kan. 97, 79 P. 2d 875; *Popp v. Wilhelm,* 150 Kan. 753, 96 P. 2d 620; *West v. Sims,* 153 Kan. 248, 109 P. 2d 479; *Bond v. Bond,* 154 Kan. 358, 118 P. 2d 549; *Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418; as well as many others cited therein.

I

Appellant first contends that, tested by the above-mentioned rules, the evidence was insufficient to establish the contract alleged by the appellees. Appellant directs attention to *Fair v. Nelson,* 96 Kan. 13, 149 Pac. 432, and *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354, and argues that the evidence disclosed only an intention

by the father to give property to his son in the future and that it failed to prove that a contract was actually made.

Appellant also argues that there is evidence of circumstances inconsistent with the existence of the alleged contract and she directs our attention to the direct testimony of the father, Wilbur F. Davis, whom she called as a witness and who then denied the contract. On cross-examination, however, he admitted substantially every claim made by the appellees. At the time of the trial the witness was ninety-seven years of age. The record discloses he was forgetful. The weight to be placed on his testimony was for the trial court to determine. The mere fact Wilbur F. Davis, on direct examination, denied the existence of the contract does not establish the fact no contract existed—it was the trial court's duty to consider all of the witness' testimony in connection with all of the evidence. Appellant also argues that the evidence disclosed a partnership arrangement between the father and son, rather than the contract pleaded, and directs our attention to evidence which she states supports the contention. It is not necessary that it be detailed. She also states that the most potent evidence tending to deny existence of the contract is the fact that in 1935 Wilbur F. Davis made a last will, the terms of which are not in harmony with the claimed contract but in contradiction of it, citing *Engelbrecht v. Herrington*, 101 Kan. 720, 172 Pac. 715, L. R. A. 1918E 785. That case does not support the contention as made. We have carefully considered the extensive argument made as to the good faith of Wilbur F. Davis, and what he must have understood the situation was between himself and his son when he made it. The evidence disclosed at considerable length the course of dealings between the father and son from 1916 to the time of the son's death in 1942, and between the son's widow and children and Wilbur F. Davis thereafter. It does appear that if certain evidence be stressed, and other evidence be disbelieved or ignored, the result contended for by the appellant could be reached. However, there was evidence from which the trial court could properly find existence of the contract pleaded by the appellees, and performance thereof.

Although evidence of the contract must be clear and satisfactory, it is the trial court which is to be convinced. In view of the result we are concerned only in whether there was substantial competent evidence to support the trial court's judgment. No purpose will be served by a detailed recital. In a summary way it may be said

that the evidence disclosed that in 1916 the father then owned the involved 240-acre tract and that it was subject to encumbrance. The son was about to be married to a girl in the neighborhood and to establish a home of his own. It was agreed between the father, then sixty-five years of age, and the son, that the father would purchase the Stone eighty for his son and that the son would farm the two places, and out of income would pay taxes and make payments on the mortgage indebtedness. At the father's death the son was to get half of the 240-acre tract. Under the arrangement the son moved on the Stone eighty. In 1925 the father and mother executed a conveyance to the son. At that time the lands were encumbered as heretofore stated. Mary Davis died in 1926. In 1928 Wilbur F. Davis purchased a residence in Peabody and moved into it. The arrangement as to the farm was again affirmed and added to by the son's agreement to use funds to maintain his father. Intervening mortgage transactions need not be noted but in 1933 the $4,500 mortgage to the Federal Land Bank to secure an amortized thirty-three-year loan and the $2,200 mortgage for a Land-Bank-Commissioner loan due over a thirteen-year period, were made. These mortgages covered the entire south half of section 28. Thereafter the son farmed the lands, paid the taxes, made the payments due on the mortgages and contributed to the father's maintenance until the death of the son in 1942. At that time some of the son's children were grown. At the time of the death of the son, his father told the widow that she and her family should continue to perform the contract, and there is evidence that they did so.

Appellant's contention the evidence was insufficient to prove the existence of the contract and performance under it, cannot be sustained.

II

Appellant next contends that the alleged contract was not sufficiently definite in its terms and equitable in its provisions and so far performed that it may be enforced by a remedy in the nature of specific performance, and in developing that contention, she directs our attention to portions of the evidence which favor the various propositions advanced. She contends there were three contracts, one made at the inception of the whole matter in 1916, another made when the father moved to Peabody in 1928 and a third made when the son died in 1942, and criticizes each separately, arguing that in the 1916 contract there was no agreement Hervey W.

Davis would receive one-half of the 240-acre tract, and that, taken altogether, the evidence was not definite as to whether the son, under the arrangement with his father, occupied the status of a partner or simply that of a tenant. She contends further that the widow and children of Hervey breached the contract by turning over the performance of the farm work to a tenant. No purpose will be served by taking up each particular matter urged by appellant. It is not necessary to repeat all the details thereof, but the evidence showed an agreement in 1916 between the father and the son that in consideration of the son's remaining, on conditions heretofore set forth, the father would purchase and give the son the Stone eighty, and that at the father's death the 240-acre tract should go to the son and daughter equally. That was certainly definite. When the father moved to Peabody in 1928 that contract was not rescinded, and it was modified only to the extent of providing the son should furnish certain maintenance to his father in Peabody. In 1933 new mortgage loans were made so that annual payments would eliminate principal as well as satisfy interest. In 1942 the father told the son's widow to carry on. To a considerable extent it is immaterial whether it be said there was one prime contract, later modified by change of circumstances, or a series of three or more contracts. The answer pleaded and the proof showed that the 1916 contract was repeatedly reaffirmed when later changes were made, and while there was disputing testimony, there is ample evidence that the son and his family farmed the entire half section, contributed to the father's maintenance, and from the proceeds paid the taxes and interest on the mortgages, and after 1933 the annual payments on the amortized mortgage loans, as well as the taxes, and that after the death of the son, the widow and children so performed. Appellant's contention that the appellees breached the contract is predicated on testimony that they had had a farm sale and had rented some land to a tenant. This does not prove that they failed in any particular in performing their obligations to Wilbur F. Davis and there is evidence they have not done so.

Appellant then argues that the enforcement of the contract would be inequitable in that it permits the son's widow, who is not a blood relative of Wilbur F. Davis to receive property in which she would have no interest as an heir, citing G. S. 1947 Supp. 59-506 and 59-615, and that the enforcement of the contract is inequitable to third persons (herself) to whom Wilbur F. Davis had come under some

legal or moral obligation subsequent to the time when he made the contract with his son. It may be observed there is evidence that appellant was aware of the contract between the father and son long before she extended any care to her father. It may also be observed that she is to be paid for her services from the one-half interest she will receive in the 240-acre tract at her father's death. Whether either appellant or appellees will be adequately paid may possibly be open to doubt, for contrary to what would have been any reasonable expectation in 1916, when the father was sixty-five years old, he was still alive and ninety-seven years old when this case was tried below. The question whether specific enforcement of such a contract is equitable may not be entirely dissociated from the proposition that it will not be so enforced where the promisee can be adequately compensated in money, a matter later discussed, but assuming that the services rendered may not be adequately compensated in money, may it be said the contract was inequitable? A very brief review of the facts shows that when the contract was made in 1916 the appellant had previously married and established a home of her own. Her brother, by reason of the contract, stayed with his father. He forsook any advantages that might have accrued to him to be out and on his own and assisted his father and mother until her death in 1926, and continued thereafter to perform his agreement until his own death in 1942. In that time he discharged obligations of his father and rendered him valuable service, although it cannot be denied he also obtained some benefits. At his death, under his father's agreement with his widow, she and her children carried on, paid principal and interest on the mortgages covering the father's real estate, and taxes. If we should reverse this case and hold that the father's deed to appellant is good, then there would be nothing from which the widow and children could be repaid, and the efforts of the son and their subsequent efforts would be lost so far as remuneration is concerned, to the ultimate profit of the appellant. When the whole series of events is taken into consideration, it would seem inequitable if the contract were not enforced. Appellant's contention may not be sustained that the contract is not sufficiently definite in its terms nor so far performed by the appellees that it may be enforced by a remedy in the nature of specific performance.

## III

Appellant presents an argument that the services of Hervey W. Davis and his widow and children, rendered under the contract, can be compensated in money. As we understand, the contention is predicated on an assumption that the trial court held that the contract did not have to be personally performed by the appellees but that they could hire someone to perform for them, hence they could be compensated in money. We think the assumption is not supported by the record, and in any event, it ignores all performance prior to the farm sale held in 1947. Appellant says that our decisions from *Baldwin v. Squier*, 31 Kan. 283, 1 Pac. 591, down to *In re Estate of Henry*, 157 Kan. 471, 142 P. 2d 717, have recognized the rule that if services performed in similar circumstances may be compensated in money, the claimants should be left to their legal remedies, and that may be conceded. But many of those decisions show that whether there may be compensation in money, depends on the facts of the case. In *Schuler v. Rehberg*, 145 Kan. 176, 183, 64 P. 2d 571, the court recognized the rule that courts will decline to decree specific performance where the services performed are inconsequential compared with the compensation to be paid, but that in applying that principle the courts are reluctant to make a new contract for the parties. After reviewing the facts, and reference is made to the opinion therefor, it was said the trial court did not regard the value of the property to be left to the claimant so out of proportion to the services to be performed as to justify refusing specific performance and that this court could not say as a matter of law that the contract should be disregarded and that claimant should have presented a money claim. In *Dent v. Morton*, 148 Kan. 97, 79 P. 2d 875, may be found an extensive review of our decisions dealing with the question. In that case the question arose on the pleadings which disclosed an agreement between an elderly woman and a young boy whereby he was to live with her and ultimately receive certain property. She died within a few months. It was held that under the facts pleaded it could not be said as a matter of law that his claim to the property could not be specifically enforced but must be compensated in money. In *In re Estate of Henry*, supra, specific performance was withheld, but in the opinion it was stated that specific performance of contracts concerning land has been upheld where the intimate and peculiar services rendered

by the claimant could not be adequately compensated in money and where it would be inequitable to withhold specific performance, citing cases in support.

Appellant also argues that it would be inequitable to compel performance of the contract for the reason Hervey W. Davis and his widow and children have already been compensated in excess of the value of their services by retaining half of the profits of the land prior to 1928 and almost all of the profits since. The factual situation stated is contrary to the judgment and finds support only in some disputed testimony.

Under the facts of this case and under the decisions above noted and others cited therein, we think it may not be said as a matter of law that the record discloses a situation where specific performance should be denied for the reason that claimants' demands may be satisfied in money, or for the reason such relief would be inequitable.

IV

Appellant also argues that the evidence was insufficient to establish that Wilbur F. Davis was mentally incompetent to execute the deed conveying the 240-acre tract to the appellant. She contends that a mere showing of his physical weakness or the impairment of his memory by reason of his advanced age will not of itself indicate a want of mental capacity (18 C. J. 221, 428, 443; 16 Am. Jur. 486), and that his mental condition should be determined by testimony in regard to it about the time the deed was executed in preference to testimony at other times (18 C. J. 444). The rule contended for may be conceded but it does not solve the question. The evidence was in dispute, and would have supported a judgment either way. We shall not set out the evidence as to the old gentleman's frailties, nor the pressure on him by others, but shall content ourselves by saying the trial court's conclusion finds support in the evidence.

V

Appellant's last contention deals with whether the deed to appellant was based upon a sufficient consideration, but in view of what has been previously said, this contention need not be discussed.

It has not been made to appear that the trial court erred in rendering judgment and the judgment is affirmed.