No. 37,695

In the Matter of the Estate of Henry J. Spark, Deceased. (GERALDINE BROWN, *Appellee*, v. CLIFFORD H. PUGH, Administrator *de bonis non* of the Estate of Henry J. Spark, Deceased, *Appellant*.)

(212 P. 2d 369)

Opinion filed December 10, 1949.

*Joe T. Rogers,* of Wichita, argued the cause, and *Roy L. Rogers,* also of Wichita, was with him on the briefs for the appellant.

*L. M. Kagey* and *Max L. Hamilton,* both of Wichita, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: Appellee instituted this action by filing a petition in probate court for specific performance of an oral contract alleged to have been entered into between appellee and the deceased. The probate court denied appellee's petition, but on appeal the district court upheld her claim and decreed specific performance of the contract. The court determined that by such oral contract the deceased had agreed to deliver to appellee certain real property located at 1323 N. Poplar street in Wichita. The district court made rather comprehensive findings of fact and conclusions of law. From its orders overruling motions to set aside these findings and conclusions and for a new trial, and from the judgment rendered in favor of appellee, the administrator appeals.

Geraldine Spark Brown is the daughter of Otto H. Spark who was a brother of the deceased, Henry J. Spark. Geraldine was born January 4, 1920, and her mother died as a result thereof. Shortly after her mother's death, Geraldine was taken to the home of deceased where she was reared by deceased and where she continued to live for more than twenty-two years. In 1921 or 1922, the natural father, Otto Spark, was approached by the Henry Sparks, who asked him to sign an agreement that in the event of his death, the Henry Sparks were to have custody of Geraldine. Otto Spark executed such an agreement, but after his remarriage in 1925, he apparently made some attempt to regain custody of Geraldine. This attempt was abandoned upon the promise of the Henry J. Sparks that they desired to raise Geraldine as their own child and to leave all their property to Geraldine and a son of Mrs. Henry J. Spark. Mrs. Henry J. Spark died in 1936. Continuing to live with Henry J. Spark, Geraldine graduated from the public schools in 1939 and enrolled in business college where she completed a business course about one year later. In 1940, she had a desire to leave the

home of Henry J. Spark, deceased, and go to work, but was encouraged to stay, and did stay, upon the promise that Henry J. Spark would give her the residence property located at 1323 N. Poplar street in Wichita. At various times through the years his intention to give this property to Geraldine was indicated and she continued to make her home with Henry J. Spark. She worked in the home, assisted him in the operation of his café, and drove his car for him. Geraldine married in 1942, but her husband went into the military service and she remained with the deceased, Henry J. Spark, until after her husband's discharge. Her uncle and foster father, Henry J. Spark, died in October, 1946.

Plaintiff's petition purported to allege an oral contract between Geraldine Spark and Henry J. Spark to the effect that if Geraldine would continue to live in the Henry J. Spark home, keep house for Henry J. Spark, and do all other things necessary to be done, that he would give her the home place at 1323 N. Poplar street in Wichita; that Geraldine forbore obtaining a job and leaving the home and continued to reside with Henry J. Spark, making a home for him, devoting her time to his comfort, and extending to him the companionship, care and obedience of a daughter while she relied upon his promise to give her the North Poplar street property.

There was evidence on behalf of claimant to support this oral agreement between Geraldine and deceased. Geraldine's father, Otto Spark, testified that in 1941 the deceased, Henry J. Spark, told him that Geraldine had wanted to leave home, get a job and go to work, but that Henry Spark did not want her to do that and if she did stay with him and take care of the house and of him, he, Henry J. Spark, would give her the place on North Poplar street. Another witness, Nellie Krantz, testified that she was told by Henry J. Spark, the deceased, in 1943 that he had an agreement with Geraldine that if she would stay there with him he would let her have the property at 1323 N. Poplar, and that Henry J. Spark told her he was going to let her have that property if she stayed at the house and did things for him; that he was going to give the property to Geraldine as soon as he could get the present tenants out. She also testified as to the services rendered to Henry J. Spark by Geraldine, the doing of general work around the house, working in Henry J. Spark's restaurant, and driving the car for him. These and several other witnesses testified pertaining to statements made by the deceased at various times from 1940 to 1946 that he "was going to

give the Poplar street property to Geraldine," and that he "would give the Poplar street property to Geraldine," and that "the Poplar street property belonged to Geraldine," and that he "gave the property to her." There was other substantial testimony that Geraldine did various household chores, the laundry work, et cetera, and that Geraldine obtained supplies, conducted business for deceased, worked in his café, and acted as chauffeur for him. There was also evidence that she referred to the deceased as her "Dad," and in writing to Geraldine, the deceased referred to himself as "her Pa."

In addition to the foregoing evidence on behalf of claimant, there was some evidence of a contract between the deceased, Henry J. Spark, and appellee's natural father Otto Spark, to the effect that the deceased would leave Geraldine and her foster brother all of his property if Otto Spark would permit Geraldine to live with Henry J. Spark as his daughter. No allegation of such a contract was contained in the petition, so at the close of all the evidence, appellee was permitted to amend her petition to conform to the proof by including an allegation as to such a contract between Otto Spark and Henry J. Spark.

After hearing all of the evidence, the trial court made findings of fact, those pertinent to the issues here involved being as follows:

"2. Claimant's father agreed with deceased and his wife in the office of I. N. Williams in 1921 or 1922 in writing that claimant would not go to any of her mother's family in case of the death of claimant's father."

"4. Claimant's father remarried in 1925, at which time he requested possession of the claimant and was told by the deceased that he had more to give claimant and after his death he would leave his property to claimant and the stepson Charles Spark, if claimant's father would leave claimant with the deceased and his wife. The deceased at this time also told claimant's father that claimant's father was not going to take claimant to live with any stepmother; that she was going to stay in his (deceased's) home, and if the claimant's father obtained possession of claimant it would cost him a great deal of money. As a result of and in reliance on said promises, and the threats made by deceased, the claimant's father forebore exercising the rights of a father, and deprived the claimant of being reared in the home of her natural father by leaving said claimant in the home of the deceased.

"5. Claimant's father, wishing to help in the time of bereavement, came to the home of the deceased in November, 1936, at the time of the death of deceased's wife, and had conversations with the deceased. At which time deceased stated to claimant's father that claimant and deceased's stepson were all that deceased had to live for, and that he was going to continue the home and leave everything to said kids after his death.

"6. Deceased met claimant's father in a barber shop in approximately 1941 or 1942. At which time claimant had finished a business college course

and wanted to get a job, leave deceased's home and build a business career for herself. Deceased told claimant's father that he (the deceased) had promised claimant the Poplar Street place if she would stay with the deceased, take care of the house, drive the car, help with the Cafe business, and assist with the rental properties which deceased then owned. In reliance on these further statements claimant remained in the home of the deceased and forebore her desires and rights and privileges as above set out.

"7. Deceased had later conversation with claimant's father in which he stated that the North Ash property had been deeded to deceased's stepson, Charles, and that he had told the claimant he was going to deed the North Poplar place to claimant as soon as he (the deceased) could get possession thereof from a tenant with whom deceased was having trouble.

"8. Deceased died in October, 1946. At which time he was owner of the legal title to the property known as the Poplar place which is now in question.

"9. Claimant's evidence and the evidence of her father is corroborated by witnesses who have no interest in the case and are not related to claimant. Fred Johnson, Charles Spark, Roy F. McGuire, James Norris, Myra Johnson, and Nellie Crance.

"10. Claimant by reason of and in reliance on the promises and statements made by deceased was as a daughter to the deceased, both during her single and married life, and deceased was in the same relationship as a father to her. Claimant's father was deprived of the love, affection, companionship, and association of his own daughter, and by the same reasons claimant was deprived of knowing her natural father, having his love, affection, companionship, and association, and the experience of a natural child in the home of their natural parent."

## The court's conclusions of law are in part as follows:

"1. There was a valid contract entered into between deceased, claimant. and claimant's father beginning in 1926 when claimant was first deprived of the right of going with her natural father. Which contract was reaffirmed down through the years by performance on the part of claimant in remaining with the deceased. More particularly when claimant refrained from and forebore the obtaining of a position and career of her own, and at the same time being deprived of knowing her own natural father's home and affection.

"2. There is no standard whereby love, affection and services such as claimant rendered to the deceased; association and obedience of a daughter to deceased, instead of to her own natural father, whereby claimant could be compensated in money."

"4. Plaintiff is entitled to specific performance of the contract entered into as set out by her petition.

"5. Claimant is a legal owner in fee simple and entitled to immediate possession of the following described real property:

"Odd Lots 21 to 35, inclusive, on Mona, now Poplar Street in Fairmount Park Addition to the City of Wichita, Sedgwick County, Kansas, known as 1323 North Poplar.

"6. Claimant is entitled to an accounting of the administrator *de bonis non* for all rents and profits derived from the above described property from the

time of the filing of the claim in Probate Court until the possession of said property is turned over to the claimant, and is entitled to judgment against the estate and the administrator for all sums received from said property after deduction of taxes, insurance, and repairs and upkeep on said premises, as is shown in the accounting of said administrator."

Appellant contends and argues at some length in his brief that the demurrer to plaintiff's testimony should have been sustained. The notice of appeal to this court recites that appellant is appealing from (1) the judgment of the district court rendered on December 18, 1948, whereby the district court adjudged that the property described therein belonged to Geraldine Spark Brown by reason of an alleged oral contract; (2) from the order of the district court made January 13, 1949, overruling the administrator's motion to set aside the findings of fact and conclusions of law; and (3) an order of the district court overruling the administrator's motion for a new trial. There being no appeal from the trial court's order overruling respondent's demurrer to claimant's evidence, it is not a proper matter for review by this court.

Appellant next argues that the evidence fails to support a finding that there was an oral contract between (1) appellee and Henry J. Spark, deceased, or (2) Henry J. Spark, deceased, and the appellee's natural father, Otto Spark. From the testimony heretofore referred to, we conclude that there was substantial evidence that the appellee Geraldine Spark Brown remained in the home of Henry J. Spark, deceased, gave up her desire and opportunity to obtain employment and continued to work for Henry J. Spark in his home and in his place of business in reliance upon the oral promise made in 1940 by Henry J. Spark, deceased, to give her the real property described as 1323 N. Poplar street in Wichita. The evidence heretofore related supports the trial court's finding and conclusion that such an oral contract was entered into between this appellee and Henry J. Spark, deceased. Such a contract between the appellee and deceased having been properly pleaded, and having been established by substantial evidence, the trial court's finding thereon is conclusive upon appeal to this court. On appeal, we are concerned with substantial evidence which supports the findings of the trial court, and not with such evidence as may be contrary thereto. It is not our function to weigh the evidence—that is the prerogative of the trial court; and we must assume that the trial court considered all the evidence. Although the evidence to establish such an oral contract must be clear and satisfactory, it is the trial court which

must be satisfied and convinced (*Jones v. Davis,* 165 Kan. 626 [Syl. ¶ 2], 197 P. 2d 932).

Having thus determined that the evidence and the findings and conclusions of the trial court with respect to the oral contract between appellee and deceased support the judgment rendered, it is not necessary for us to labor the question as to whether another contract existed between Otto Spark and the deceased or whether such a contract was properly brought into the issues of the case by claimant's motion to amend her petition to conform to the proof offered at the trial in the district court.

In connection with his argument that appellee failed in the court below to establish a contract between herself and Henry J. Spark, deceased, appellant relies upon the case of *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665. In that case the trial court found that an oral contract was made between the deceased and the plaintiffs Woltz whereby the deceased agreed to leave her property to Mr. and Mrs. Woltz in consideration of their taking care of deceased for the remainder of her life. The findings also stated that the evidence *did not disclose just what was to be done by the Woltzes by way of their performance,* but that the Woltzes' conduct toward· deceased was that of dutiful children. On appeal the trial court was reversed on the ground that the alleged oral contract was not clearly pleaded nor definitely established by clear and satisfactory proof, and that it was indefinite in its terms both with respect to the property it was to cover and with respect to what the promisees were to do under it.

Many cases have been before this court seeking to establish and enforce contracts to devise property in consideration for the performance of personal services of one kind or another. In some cases the contract has been established and upheld, and in others the existence of a contract denied. (See cases pro and con cited on pages 260-261, *Woltz v. First Trust Co.,* supra. See, also, *Smith v. Nyburg,* 136 Kan. 572, 16 P. 2d 493; *Bray v. Cooper,* 145 Kan. 642, 66 P. 2d 592; *Popp v. Wilhelm,* 150 Kan. 753, 96 P. 2d 620; *Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812; *Paton v. Paton,* 152 Kan. 351, 103 P. 2d 826; and *In re Estate of Bond,* 158 Kan. 776, 150 P. 2d 343, upholding such contracts; and *Cunningham v. Cunningham,* 135 Kan. 571, 11 P. 2d 749; *Laupheimer v. Buck,* 135 Kan. 631, 11 P. 2d 721; *Heine v. First Trust Co.,* 141 Kan. 370, 41 P. 2d 767; *Trackwell v. Walker,* 142 Kan. 367, 46 P. 2d 603, holding such contract was not established.)

In the instant case, as distinguished from the Woltz case relied upon by appellant, there was substantial evidence that the deceased agreed to give appellee the property specifically described as 1323 N. Poplar street in Wichita, Kan., if she would give up her desire to get a job where she could use her business training, and would continue to live in his home as a devoted daughter and to work for him in the home and in his business. Appellee performed her part of the oral contract, in addition to giving the deceased the devotion and companionship of a daughter for a period of several years. In the instant case the oral contract was definite in its terms as to the specific property involved and as to just what performance it required of this appellee. It was established by substantial evidence and the trial court so found.

Finally, appellant contends that it was error for the trial court to decree specific performance even though the oral contract between appellee and the deceased was established by competent testimony, for the reason that appellee had an adequate remedy at law, and for the reason that the performance by appellee was grossly inadequate to justify a transfer to her of the North Poplar street property. No special finding was made by the trial court, and none was requested, as to the value of the North Poplar street property— but the testimony as to its value varied from $8,000 to $9,500. The trial court's conclusion of law number two was that "there is no standard whereby love, affection and services such as claimant rendered to the deceased—association and obedience of a daughter to deceased instead of to her own natural father—whereby claimant could be compensated in money." That conclusion is justified from the evidence adduced and the findings made by the trial court. It is true that the love, companionship and a daughter's devotion for the period prior to the actual making of the oral contract between appellee and deceased (1940) cannot be regarded as consideration for that oral contract (*In re Estate of Henry,* 156 Kan. 788, 137 P. 2d 222 [Syl. ¶ 3]); but that filial relationship continued from the time appellee came to deceased's home as a four-months-old baby— it existed both before and after the actual oral agreement between appellee and deceased concerning the North Poplar street property —and it continued along with the other actual services as a part of the consideration for deceased's promise.

We again distinguish the facts in *Woltz v. First Trust Co.,* supra, from those of the instant case. There the plaintiffs were man and

wife who lived apart from the deceased promisor. They performed odds and ends of tasks for deceased which could have been performed by any third party not living under deceased's roof, and could have been compensated in money. The Woltzes themselves claimed their services to be worth $15,000. However, deceased's property which the Woltzes asked the court to turn over to them was valued at $75,000. Thus in the Woltz case the services involved were strictly of a business nature, and also were grossly inadequate when compared to the value of deceased's property.

This court has recognized that love, companionship and devotion along with services in the performance of household duties and other beneficial tasks, are difficult—if not impossible—to measure by pecuniary standards (*Bray v. Cooper,* supra; *Dent v. Morton,* 148 Kan. 97, 79 P. 2d 875). On the other hand, we have also held that equity will not enforce a decedent's contract to devise land in return for services of a strictly business nature which can be compensated in money (*Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364). However, the instant case also involved a filial relationship rather than one of a strictly business nature—and being so, the performance by appellee could not be compensated in damages. The filial relationship in the case at bar is so obviously one that cannot be compensated in terms of dollars, that it is not necessary to go as far as the rule announced in *In re Estate of Henry,* supra, where the court said at page 803:

"It is next contended that the value of claimant's services could readily have been compensated in money, consequently specific performance should not have been granted. A majority of this court rejects this contention— holding that there never was any contract that claimant should be compensated in money; he was to be paid in land; and if the oral contract is to be enforced at all, it should be enforced as nearly as practicable in accordance with the obligations of the promisors. (*Hoppas v. Bremer,* 114 Kan. 609, 220 Pac. 251, syl. ¶ 3.)

Under the facts disclosed by the record and heretofore summarized in this opinion, we cannot say that the trial court erred in concluding, as it must have concluded, that the consideration by way of appellee's services, love and devotion, was adequate. The oral contract was an equitable one, and should be enforced by specific performance. The statute of frauds (G. S. 1935, 33-106) is not a bar to enforcement of the oral contract which has been fully performed on the part of appellee (*Paton v. Paton,* supra, syl. ¶ 4; *Meador v. Manlove,* 97 Kan. 706, 712, 156 Pac. 731; *Smith v. Cam-*

*eron,* 92 Kan. 652, 141 Pac. 596, syl. ¶ 1; *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713).

In accordance with the views herein expressed, the judgment must be affirmed. It is so ordered.